## LAWRENCE R. WHEELER v. JOHN T. BRADY.

SCHOOL-DISTRICT ELECTIONS; *Women as Voters.* A person having all the qualifications of an elector, as defined by section 1, article 5, of the constitution, except that such person is a woman, has the right to vote at an election regularly held for the election of a school-district treasurer.

*Error from Nemaha District Court.*

QUO WARRANTO, brought by *Wheeler*, to test the right to the office of school-district treasurer of District No. 51, Nemaha county. At the annual district meeting held in March 1872, *Brady*, the defendant, was elected such treasurer, and thereafter qualified and entered upon the duties of his office. At the annual district meeting held in March 1873, 140 votes were cast, of which *Wheeler*, the plaintiff, received 70, and one Geo. H. Adams received 70. Of those voting for *Wheeler*, 60 were men, and 10 were women. Of those voting for Adams, 50 were men, and 20 were women. The election board held that there was no election, (canvassing for each candidate 70 votes,) and "adjourned the election for further proceedings" until April 5th, and the "election was subsequently, by several adjournments further postponed until April 19th." In the meantime a call for a "special election" was signed by 60 of the electors of said district,

and such special election was called for April 19th. On that day the electors of said district met at the proper place, and proceeded to elect a treasurer, and for that purpose 60 votes were cast, all for said *Wheeler*. *Wheeler* afterward qualified as such treasurer, and demanded the books and papers from *Brady*, who was holding over for want of a duly-elected and qualified successor. Upon *Brady's* refusal to surrender the office, *Wheeler* commenced this action. Trial, at the October Term 1873. When the plaintiff rested, *Brady* demurred to the evidence. The district court held that women had the legal right to vote at said school-district meeting for school-district officers — that as *Wheeler* and Adams had each received 70 votes, there was no election — that the "adjournments" of said election were unauthorized and void — that as the call for a "special election" was not signed by a majority of the electors of the district, such special election was illegal and void; and that, as *Wheeler* had not shown any right to the office, he could not maintain the action. The court dismissed the petition, and adjudged costs against *Wheeler*. From this decision and judgment *Wheeler* appeals, and brings the case here on error.

*Johnson & Falloon*, for plaintiff:

If the 2d clause of § 20 of ch. 92 of Gen. Stat. is constitutional, the judgment is right, unless the adjournment kept alive the powers of the electors until April 19th, for our call was not signed by a majority of all the voters if females are voters, and that was illegal too. If the plaintiff has mistaken the law in this case it arises from a misinterpretation of the constitution by the light of the case of *Winans v. Williams*, 5 Kas., 227. At common law females had no such right, having no political status whatever. Maine's Ancient Law, 140; Cooley Const. Lim., 599; Blackst. Com., 171. Article 5 of our constitution limits political power to males, thus following the laws and usages of all our western civilization, which has grown up from the Roman civilization, or been influenced by its laws.

On the other side, it is claimed that § 23 of art. 2 of our constitution confers this right in school elections. This section confers nothing, enlarges nothing, removes no disability, and neither declares nor creates any new right; but merely imposes a limitation upon the legislature, to-wit, that in the regulation and formation of schools no distinction shall be made between males and females; and it seems to us that its terms prohibit the distinction of a right, rather than confer any new ones. The equality perhaps related to the pupils, teachers, taxation, and possibly to the enumeration of inhabitants in the creation of districts. If the clause had provided that no distinction should be made between whites and blacks, it could hardly be claimed that this was sufficient to confer suffrage where it did not exist before. Such terms in a constitution do not enlarge rights. *Bradwell v. The State*, 16 Wallace, 130. The case of Susan B. Anthony, though not the opinion of an appellate court, by holding that the amendments to the federal constitution do not confer suffrage on females, supports this principle.

It was argued at the trial that the law authorizing women to "vote" at school meetings, is not the exercise of suffrage any more than it would be to vote at a church meeting. We think this view not tenable. School districts are municipal corporations, clothed with the exercise of dominion which belongs to the state. If it were not so, this action would not lie, as the office would not be a public one. Dillon's Munic. Corp., 32, note. Nor can any distinction be maintained upon the meaning of the words "voters," and "electors." Webster makes no distinction; neither does Bouvier. Section 4 of article 2 of the constitution provides no one but a qualified voter shall be eligible to the legislature. If females are "voters," they are also eligible to office, unless, in law, voter and elector mean entirely different things.

*Nathan Price*, and *W. D. Webb*, for defendant:

The principal question here is, as to whether women had the right to vote. Plaintiff relies upon the case of *Winans*

*v. Williams*, 5 Kas., 227. That was a case in which the party attempted to vote at a *general* election. The constitution. (art. 4) provides for two elections, and article 5 defines who shall be qualified electors; but a school-district meeting does not come within the provisions of either of these articles. A school district is simply a *quasi* corporation, organized for the purpose of the education of the children within a certain district of country. Now if the legislature should allow the people within certain districts of the state to organize themselves into *quasi* corporations for the purpose of caring for and protecting the poor, would any one say that women must be excluded from such corporation, or that a law which gave them a voice in the management of its affairs, would be unconstitutional? This case is however much stronger. Section 23 of article 2 of the constitution expressly provides that "the legislature in providing for the formation and regulation of schools shall make no distinction between the rights of males and females." Now how females can have the same rights in "regulating" a school, without having the right to vote in the school meeting in which all its affairs are regulated, we are unable to see. Consequently, the law which gives them such right is not only constitutional, but any law which attempted to take it from them would be unconstitutional. If we are right in this view, there was no election at the regular school meeting. As to the question of the adjourned meeting, we say there is simply nothing in it. The meeting could not "adjourn" the election, and it is conceded that if women are legal voters at a school-district meeting the call for the special election was insufficient.

The opinion of the court was delivered by

VALENTINE, J.: The only question involved in this case, or rather the only question which we need consider, is, whether persons having all the qualifications for electors as defined by § 1, article 5 of the constitution, except that they are women, have the right to vote at an election regularly held for the election of a school-district treasurer. This case differs widely

from the case of *Winans v. Williams*, 5 Kansas, 227. While we have no statutory or constitutional provision authorizing women to vote for either state or county superintendent of public instruction, and while the constitution would seem impliedly at least to prohibit such a thing, yet we have statutory provisions which expressly authorize women to vote for school-district treasurers. Section 19, article 3, of the school law, provides that—

"The inhabitants qualified to vote at a school meeting, lawfully assembled, shall have power, * * * 3. To choose a director, clerk and *treasurer*, who shall possess the qualifications of voters." (Gen. Stat., 918.)

And § 20 of the same article provides that—

"The following persons shall be entitled to vote at any district meeting: *First*, All persons possessing the qualifications of electors, as defined by the constitution of the state, and who shall be residents of the district at the time of offering to vote at said elections. *Second*, All white *female* persons over the age of twenty-one years, not subject to the disqualifications named in section second, article fifth, of the constitution of the state, and who shall be residents of the district at the time of offering to vote." (Gen. Stat., 919.)

But it is claimed that the second subdivision of said § 20, of the school law, is unconstitutional and void, as being in contravention of § 1, art. 5, of the constitution, which reads as follows:

"Every white *male* person, of twenty-one years and upward, belonging to either of the following classes, who shall have resided in Kansas six months next preceding any election, and in the township or ward in which he offers to vote at least thirty days next preceding such election, shall be deemed a qualified elector: *First*, Citizens of the United States. *Second*, Persons of foreign birth who shall have declared their intention to become citizens conformably to the laws of the United States on the subject of naturalization."

Now does § 1, art. 5, of the constitution, have any application to the election of school-district treasurers? The constitution provides for two, and only two, elections, to be held by the people, to-wit, general elections and township elec-

tions. (Const., art. 4, § 2.)   And it does not anywhere even
mention school-district elections or meetings.   It provides
for, or at least recognizes, the *election* of various officers:
First, all the state officers provided for by the constitution,
to-wit, the governor, lieutenant governor, secretary of state,
auditor, treasurer, attorney-general and superintendent of
public instruction; (Const., art. 1, §§ 1, 2, 14.)   Second, mem-
bers of the legislature; (art. 2, §§ 2, 4, 5, 8, 9, 13.)   Third,
judges of the supreme court; (art. 3, §§ 2, 11.)   Fourth,
judges of the district courts; (art. 3, §§ 5, 11.)   Fifth, clerks
of the district courts; (art. 3, § 7.)   Sixth, probate judges;
(art. 3, §§ 8, 11.)   Seventh, justices of the peace; (art. 3, §§ 9,
11.)   Eighth, county superintendent of public instruction;
(art. 6, § 1.)   Ninth, township officers; (art. 9, § 4.)   But
the constitution does not anywhere even mention the election
of any school-district officer.   The constitution does not
require that all the offices which it creates or recognizes
should be filled by an election of the electors mentioned in
§ 1, article 5 of the constitution, or even by an election at all.
For instance, the clerk and reporter of the supreme court are
appointed by the judges; (art. 3, § 4;) a judge *pro tem.* of the
district court is elected by the bar; (art. 3, § 20;) trustees of
the public benevolent institutions are appointed by the gov-
ernor; (art. 7, § 1;) directors of the penitentiary are appointed
or elected as prescribed by law; (art. 7, § 2;) militia officers
are also appointed or elected as provided by law; (art. 8, § 3;)
and vacancies in the various offices are filled in various ways,
generally by appointment; (art. 1, §§ 11, 13, 14; art. 2, § 19;
art. 3, § 11; art. 7, § 3.)   And the constitution itself specific-
ally provides that all officers whose election or appointment
is not provided for in the constitution shall be elected or ap-
pointed as may be prescribed by law.   Thus, § 19, art. 2, of
the constitution, provides that, "It [the legislature] shall
have the power to provide for the election or appointment of
all officers, and the filling of all vacancies not otherwise pro-
vided for in this constitution;" and § 1, article 15, provides
that, "All officers whose election or appointment is not oth-

erwise provided for, shall be chosen or appointed as may
be prescribed by law." Now, as we have before stated, there
is no school-district election or meeting provided for in the
constitution; there is no provision as to how school-district
officers shall be elected, appointed, or chosen; and we sup-
pose no one will claim that they are, by the terms of the
constitution, to be elected at either of the elections provided
for in the constitution; hence it would seem that the legisla-
ture would have full and complete power in the matter; that
the legislature might provide for the election or appointment
of school-district officers as it should choose, when it should
choose, in the manner it should choose, and by whom it
should choose. This would follow even if § 1 of article 5 of
the constitution were by its terms capable of being made ap-
plicable to school-district elections. But said section cannot
be made applicable to such elections except by a change of
its terms. If it applies in its present form, then every per-
son who is in other respects qualified, and who has resided
"in the *township* · * * * in which he offers to vote at least
thirty days next preceding such election, shall be deemed a
qualified elector." That is, a legal voter of any school dis-
trict in any township would be·a legal voter of every other
school district in that township. In every school district
of that township he could certainly swear that he was a
legal elector "in the *township* in which he offers to vote."
And if said section applies, then this right to vote in every
school district in the township in which an elector resides, is
a constitutional right which cannot be abridged by the legis-
lature, or by any other power except the entire people of the
state by way of amendment to the constitution. Probably
nearly every township in the state contains more than one
school district. In the county from which this case comes
there are seventy-eight school districts, and only fourteen
townships. In many of the counties the proportion of school
districts to the number of townships is much greater. For
instance, in Crawford county there are one hundred school
districts, and only nine townships. Now, if § 1 of article 5

of the constitution does not apply to school-district elections, then what is there to prevent the legislature from conferring the right of suffrage in school-district elections upon women? There is nothing in the nature of things, or in the nature of government, which would prevent it. Women are members of society, members of the great body politic, citizens, as much as men, with the same natural rights, united with men in the same common destiny, and are capable of receiving and exercising whatever of political rights may be conferred upon them. We must answer the main question involved in this case in the affirmative; and therefore the judgment of the court below must be affirmed.

All the Justices concurring.