MAYOR AND TRUSTEES OF THE TOWN OF VALVERDE, PLAINTIFFS IN ERROR, v. SHATTUCK ET AL., DEFENDANTS IN ERROR.

1. STATUTE, VOID IN PART.

Where part only of a legislative act is void, the residue may sometimes be upheld; but judicial authority cannot substitute anything in place of the void part; if the residue of the act cannot stand with the void part cast out, then the whole act must fall; and where a statute has but a single object, if the provisions for the accomplishment of that object be void, the whole act fails.

2. LEGISLATIVE POWER—MUNICIPAL CORPORATIONS.

In general, the legislature has plenary power in respect to municipal corporations, and a legislative act relating thereto will be upheld unless its unconstitutionality is clearly and palpably apparent.

As a town or city increases in population, territorial enlargement, public improvements and modifications of its local government become necessary to the enjoyment of life, the protection of health, and the security of property.

3. ELECTIONS—QUESTION OF ANNEXATION.

The word *elections* in section 1, article 7 of the Constitution, is not used in its general or comprehensive sense, but in its restricted political sense, meaning public elections for the choice of public officers.

A statute requiring the question of the annexation of a town or city to be submitted to the determination of such qualified electors of the municipality as have in the year next preceding paid a property tax therein, is not unconstitutional.

4. SPECIAL LEGISLATION.

The term *township* in the legal nomenclature of this state refers to an *involuntary* corporation, or *quasi* corporation, and not to a *voluntary* municipal corporation such as an incorporated town. Special legislation is not forbidden in respect to incorporated towns or cities, except in cases where a general law can be made applicable.

5. LIQUOR TRAFFIC.

The municipal authorities of incorporated towns and cities may be invested with power to license, regulate, prohibit or suppress the traffic in intoxicating liquors, subject to the general laws of the state; and such traffic may be prohibited in one part of a town or city, and licensed in another part, as the public welfare may require.

6. ALDERMANIC REPRESENTATION.

The constitution of this state does not make it imperative that there shall be local aldermanic representation in towns or cities.

7. TAXATION—PUBLIC INDEBTEDNESS.

Section 10 of the act of 1893 relating to the annexation of contiguous towns and cities is not obnoxious to certain constitutional provisions relating to taxation and public indebtedness. Art. 10, §§ 3 and 7, art. 11, §§ 1 and 8, and art. 15, § 12, considered.

*Error to the County Court of Arapahoe County.*

SPECIAL proceeding in the county court under the act of April 11, 1893, providing for the annexation of contiguous towns and cities. See Session Laws of that year, p. 451.

Upon petition by citizens of the town of Valverde for the dissolution of said town and for its annexation to the city of Denver, the court made an order requiring the mayor and trustees of said town to call an election for the purpose of determining the question of dissolution and annexation. The original order required the question to be submitted " to a vote of the qualified electors of the town of Valverde, entitled to vote at said election."

Subsequently the mayor and three of the trustees of said town appeared, and by a counter petition prayed that the order requiring the election might be vacated on the ground, as they alleged, that the legislative act under which the order was obtained is unconstitutional and void.

Upon further consideration it was adjudged by the court that said act, "in so far as it prescribes a property qualification for voters, is unconstitutional and void; but that the remainder of said act is, nevertheless, valid and sufficient;" and thereupon the original order was by the court so modified as to require the mayor and trustees of said town to call an election for the submission of the question *by ordinance* to a vote of the qualified electors of said town " without regard to the payment of a property tax therein."

To reverse the judgment of the county court, the mayor and trustees bring the record of the proceedings to this court by writ of error.

The following provisions of the constitution of Colorado are referred to, but not quoted at length, in the opinion :

ARTICLE 10.

" Sec. 7. The general assembly shall not impose taxes for the purposes of any county, city, town, or other municipal corporation, but may by law vest in the corporate authorities thereof respectively the power to assess and collect taxes for all purposes of such corporation."

ARTICLE 11.

" Sec. 1. Neither the state nor any county, city, town, township or school district shall lend or pledge the credit or faith thereof, directly or indirectly, in any manner to or in aid of any person, company or corporation, public or private, for any amount or for any purpose whatever, or become responsible for any debt, contract, or liability of any person, company or corporation, public or private, in or out of the state."

" Sec. 8. No city or town shall contract any debt by loan in any form, except by means of an ordinance, which shall be irrepealable, until the indebtedness therein provided for shall have been fully paid or discharged; specifying the purposes to which the funds to be raised shall be applied, and providing for the levy of a tax, not exceeding twelve (12) mills on each dollar of valuation of taxable property within such city or town, sufficient to pay the annual interest, and extinguish the principal of such debt within fifteen, but not less than ten years from the creation thereof; and such tax when collected shall be applied only to the purposes in such ordinance specified, until the indebtedness shall be paid or discharged. But no such debt shall be created unless the question of incurring the same shall at a regular election for councilmen, aldermen or officers of such city or town, be submitted to a vote of such qualified electors thereof as shall, in the year next preceding, have paid a property tax therein, and a majority of those voting on the question, by ballot deposited in a separate ballot box, shall vote in favor of creating such debt; but the aggregate amount of debt so created, together with the debt existing at the time of such election,

shall not at any time exceed three per cent of the valuation last aforesaid. Debts contracted for supplying water to such city or town are excepted from the operation of this section. The valuation in this section mentioned shall be in all cases that of the assessment next preceding the last assessment before the adoption of such ordinance."

### ARTICLE 15.

" Sec. 12. The general assembly shall pass no law for the benefit of a railroad or other corporation, or any individual or association of individuals, retrospective in its operations, or which imposes on the people of any county or municipal subdivision of the state, a new liability in respect to transactions or considerations already past."

Mr. J. W. HELBIG, for plaintiffs in error.

Mr. F. A. WILLIAMS, and Messrs. HELM & GOUDY, for defendants in error.

Mr. PLATT ROGERS, *amicus curiœ.*

MR. JUSTICE ELLIOTT delivered the opinion of the court.

The assignments of error are to the effect; first, that the final judgment, or modified order, of the county court is contrary to the terms of the annexation act under which this proceeding was instituted ; and, second, that the act itself is unconstitutional and void.

1. That the modified order does not follow the terms of the act is apparent from the language of sections 2 and 5, hereinafter quoted. See Session Laws 1893, p. 451, *et seq.*

The county court evidently concluded that the objection to the statute on the ground of its supposed unconstitutionality, might be obviated by rejecting that part prescribing a tax-paying qualification for voters, and that the residue of the statute might be upheld. A brief examination of the object

and purpose of the act will show whether such conclusion is correct or otherwise.

The object of the act in question is to provide for the annexation of contiguous towns and cities. Section 2 requires that the question of dissolution and annexation be submitted " to a vote of such of the qualified electors of such town or city [to be annexed] as have in the year next preceding paid a property tax therein."

Section 5 further provides that " no ballot on the question submitted shall be received by the judges of election unless the person offering the same shall be a duly qualified voter in the election precinct in which he offers to vote, and entitled to vote in such precinct at said election, and, in addition thereto, shall have in the next year preceding said election paid a property tax in said town or city."

Section 8 provides that if a majority of the votes so cast shall be " for annexation," a report showing the result of the election shall be duly prepared, certified, and filed in the office of the clerk of the county court; that the court shall examine the same, and, if satisfied that the proceedings have been regular, shall approve the report; and that from and after such approval, such town or city shall be dissolved and the territory then included within the boundaries thereof shall be and become annexed to, and part of, the city existing under special charter.

Those provisions, which require the submission of the question of dissolution and annexation to the determination of tax-paying electors, lie at the very foundation of the act itself. If a majority of the votes be " for annexation," and the proceedings be found regular, annexation is accomplished; otherwise, nothing is accomplished. It follows that if the provision prescribing the qualifications of voters be unconstitutional, then the whole act is unconstitutional. The legislature has not, by the terms of the act, consented that a town or city may be dissolved or become annexed to another, except by a majority vote of electors having the qualifications prescribed by the act itself. The reception of ballots from persons not

having such qualifications is strictly forbidden. A majority vote by electors thus qualified is, therefore, the essential con- dition to the accomplishment of annexation.

The courts will go far in giving a legislative act a particu- lar construction rather than declare it unconstitutional. But the act in this instance is so clear and specific in respect to the qualifications of voters, that there is no room for judicial construction. It is true, that where part only of a legislative act is void, the residue may sometimes be upheld; but judi- cial authority cannot substitute anything in place of the void part. If the residue of the act cannot stand with the void part cast out, then the whole act must fall.

The statute under consideration in this case has, as we have seen, a single object—the dissolution of incorporated towns and cities for the purpose of annexing their territory to another city;—in a word, the object is *annexation.* The dissolution is preliminary to, and inseparable from, annexa- tion; and those provisions which prescribe the means and procedure to be pursued, are incidental or auxiliary to the same end. So, also, the remaining provisions are dependent upon and follow the accomplishment of the single object, annexation. If those provisions of the act which prescribe the essential condition upon which annexation is made to depend be unconstitutional, the principal object of the statute fails, and the whole act fails. Cooley on Const. Lim, *177 *et seq.; In re House Bill No.* 165, 15 Colo. 593; *Reed v. Omnibus R. R. Co.,* 33 Cala. 212; *Commonwealth ex rel. v. Potts,* 79 Pa. St. 164; *St. Jo. & Denver R. R. Co. v. Buchanan County Court,* 39 Mo. 485.

The order of the court requiring the submission of the question to voters other than those prescribed by the statute was erroneous, whatever view may be taken of the statute itself. If the act be found valid, the question must be sub- mitted to such electors as the act specifies; if the act be found unconstitutional, the proceeding must be dismissed.

2. Is the act in question unconstitutional? This question has been ably argued by counsel *pro* and *con;* it must now

be determined in order that the county court may properly dispose of the proceeding.

In general, the legislature has plenary power in respect to municipal corporations. But, in this state, legislative power has been so hedged about by constitutional restrictions that we are confronted with many difficulties in this as in other cases. We are not, however, unmindful of the oft-repeated rule, that the courts will not declare a legislative act unconstitutional, unless its unconstitutionality is clearly and palpably apparent. See *People v. Wright*, 6 Colo. 96, wherein it is said:

" The powers of the general assembly are plenary, subject only to constitutional restraints, expressed or implied. To authorize an implied restraint, the implication must be a necessary one."

· See, also, *Wadsworth v. U. P. Ry.Co.*, 18 Colo. 600, wherein it is said : " So long as a legislative act is within the sphere of legislative power—that is, so long as it is not an encroachment upon the province of some other department of the government, it will be upheld, unless clearly in conflict with some provision of the constitution of the state or nation, or in violation of some private right thereby secured. The conflict between the legislative act and some specific provision of the fundamental law must, in general, be clearly apparent, or the act will not be deemed unconstitutional."

Municipal corporations are organized to promote the prosperity and secure the happiness of people living in compact communities. Police and sanitary regulations different from the general laws of the state are conducive, and, in many instances, essential, to the welfare of the inhabitants of cities and towns. As such municipalities increase in population, territorial enlargement and public improvements of different kinds, as well as modifications of the local government, become necessary to the enjoyment of life, the protection of health, and the security of property, public and private.

3. It is contended that the act under consideration is unconstitutional because a property qualification is required to

entitle an elector to vote upon the question of dissolution and annexation.   In support of this contention, section 1 of article 7 of the Constitution is relied on ; it reads as follows :

"Section 1.   Every male person over the age of twenty-one years, possessing the following qualifications, shall be entitled to vote at all elections :

" *First*—He shall be a citizen of the United States, or, not being a citizen of the United States, he shall have declared his intention, according to law, to become such citizen, not less than four months before he offers to vote.

" *Second*—He shall have resided in the state six months immediately preceding the election at which he offers to vote, and in the county, city, town, ward or precinct, such time as may be prescribed by law ; *Provided,* that no person shall be denied the right to vote at any school district election, nor to hold any school district office, on account of sex."

·  It will be observed that no property qualification is specified in the foregoing section ; hence, if an elector has the qualifications therein specified, he is entitled to vote at *all elections contemplated by said section.*   If the term *elections,* as therein used, be held to include such an election as is provided for in the act now under consideration, then the act cannot be upheld.   That the word is not used in such a comprehensive sense, may be inferred from the fact that elsewhere in the constitution wherein the creation of public indebtedness is provided for, the right to vote is restricted to such qualified electors as shall, in the next year preceding, have paid a property tax.   See article 11, §§ 6, 7, 8.   These provisions of article 11 were framed at the same time as article 7, and if they had been considered exceptions, they would doubtless have been noted as such in article 7 by the usual phrase, " except as in this constitution otherwise provided," as was done in other parts of the original constitution.   See art. 5, § 30 ; art. 6, §§ 1 and 2.

It is manifest that some restriction must be placed upon the phrase *all elections,* as used in section 1, else every person having the qualifications therein prescribed might insist upon

voting at every election, private as well as public, and thus interfere with affairs of others in which he has no interest or concern. In our opinion, the word *elections* thus used, does not have its general or comprehensive signification, including all acts of *voting*, *choice*, or *selection*, without limitation, but is used in a more restricted political sense—as elections of public officers. This view is consistent with the title of article 7, "Suffrage and Elections," and .is also in harmony with the residue of the article. See Century Dictionary; also, Webster, and Bouvier; Am. & Eng. Ency. of Law, title. *Elections*.

In *In re Nominations to Public Offices*, 9 Colo. 631, a bill relating to primary elections was held to be "a proper subject of legislation, entirely within the legislative power;" and the bill as passed excludes voters from voting who in good faith belong to another political party than the one holding the primary election. Session Laws 1887, p. 3-17, *et .seq.* Thus, we have a judicial decision of our own state, limiting somewhat the phrase, *all elections*, as used in article 7.

In the absence of any specific constitutional provision to the contrary, the legislature may choose any appropriate agency whereby to change, modify, or disincorporate municipal corporations. 1 Dillon Mun. Corp. (4th ed.) ·§§ 54, 63, 185 ; *People v. Fleming*, 10 Colo. 553 ; *Cheaney v. Hooser*, 9 B. Mon. 330 ; *Marshall v. Donovan*, 10 Bush (Ky.) 681 ; *Buckner v. Gordon*, 81 Ky. 665 ; *Blanchard v. .Bissell*, 11 Ohio St. 96 ; *Graham v. City of Greenville*, 67 Tex. 62.

Counsel for plaintiffs in error refers to the constitutional provision that "the general assembly shall provide by general laws for the organization and classification of towns and cities." Const., art. 14, § 13. Such provision does not, however, prohibit the dissolution of towns and cities thus organized by any appropriate exercise of legislative power. We find nowhere in the constitution any provision forbidding the submission of the question of dissolution or annexation to the determination of tax-paying electors. Such electors presumably have greater interest than others in questions

affecting public indebtedness or rate of taxation in the municipality where their property is taxable. As we have seen, the qualifications prescribed by the act are analogous to those prescribed in the constitution itself, where similar interests are at stake.

These views are not in conflict with the opinion *In re Extension of Boundaries of City of Denver*, 18 Colo. 288. The precise point decided in that case is summed up by the court as follows:

" In our opinion, the power of the legislature to annul the corporate existence of the adjoining towns *by an amendment to the special charter of the city of Denver, as provided by the bill submitted, must be denied.*"

The court did not hold that the legislature was powerless to disincorporate a town or city existing under general laws, nor that a majority vote of all the qualified electors of such a municipality was essential to its disincorporation.

The case at bar is unlike the case of *State v. Williams*, 5 Wis. 308, where the constitution itself expressly provided who should be entitled to vote at an election for the removal of a county seat. Section 5 of article 11 of our Constitution contains a similar provision in relation to voting for the creation of a debt for public buildings. Neither the Wisconsin case nor section 5 militates against the view we have taken.

We do not feel justified in declaring the act unconstitutional on the ground that the question of annexation is required to be submitted to the determination of tax-paying electors.

4. It is further contended that the annexation act is local or special legislation; and, hence, in conflict with section 25 of article 5 of the Constitution. The only specially enumerated case forbidden by section 25, to which the present act can be compared, is, " regulating county or township affairs." The present act affects and regulates the affairs of towns and cities, but not the affairs of townships. The term *township* in the legal nomenclature of this state refers to an involuntary corporation, or quasi-corporation, as a subdivision

of a county, and not to a voluntary municipal corporation such as an incorporated town. *County Court Garfield Co. v. Schwarz*, 13 Colo. 291; *Booth v. County Court Arapahoe County*, 18 Colo. 561; 1 Dillon Mun. Corp. §§ 22, 23; *Kelly v. Meeks*, 87 Mo. 396.

The act is general in form. Of necessity, it has some special characteristics. But considering the subject-matter of the legislation we are not prepared to say that a more general law could be made applicable. Hence, its enactment is not inhibited by the latter clause of section 25. In general, the power of a state legislature to pass an act will be presumed to exist unless the contrary clearly appears.

5. It is urged that the act is unconstitutional because of certain excise provisions. The objection is that it continues in force the ordinances of an annexed town or city, prohibiting or regulating the sale of intoxicating liquors within the original limits of such town or city, and that such ordinances cannot be repealed without the consent of the voters of such annexed territory. This objection is not maintainable. It has never been questioned in this state, so far as we are advised, that the municipal authorities of incorporated towns and cities may be invested with power to license, regulate, prohibit, or suppress, the traffic in intoxicating liquors, *subject to the general laws of the state*. The controversy has been whether the local municipal government might nullify or suspend the general laws of the state relating to tippling houses within the limits of such towns or cities. See *Huff-smith's Case*, 8 Colo. 175; also, *Heinssen's Case*, 14 Colo. 237.

In this state, the policy of our legislation has been to invest local municipal governments with large powers in respect to the traffic in intoxicating liquors. And the different towns and cities have resorted to high license, low license, local option, prohibition, or partial prohibition, as the popular will has been manifested through the local municipal officers; and so dram shops have been permitted in one part of a city or town and prohibited in another part. For example, in Denver, sometimes by the charter, sometimes by ordinance,

the petition or consent of a majority of the property owners within restricted limits has been made a condition to the licensing of saloons; and, again, the sale of intoxicating liquors has been forbidden within a certain distance of public schools and churches. The legality of such conditions and restrictions has never been judicially denied, so far as we are advised. The objections to the excise provisions of the act in question do not render the act unconstitutional; nor do they present any insuperable obstacle to annexation. They need not, therefore, be further reviewed in the present proceeding. *People v. Cregier*, 138 Ills. 401.

6. It is objected that people living in the original territorial limits of an annexed town or city can have no representation in the board of aldermen of the city to which such town or city becomes annexed. This objection is not well founded. Provision *is* made for such representation, though a case may occur in which such representation may be suspended for a brief time. Compare section 18 of the act under consideration with section 2 of the Denver charter of 1893, Session Laws, p. 135. The objection cannot be considered serious; it does not affect the constitutionality of the act. No constitutional provision has been cited making it imperative that there shall be local aldermanic representation in towns or cities in this state. The cases cited by counsel for plaintiff in error on this point bear little analogy to the present case. *Warren v. Mayor & Aldermen of Charlestown*, 2 Gray, 84; *People v. Maynard*, 15 Mich. 463; *Lanning v. Carpenter*, 20 N. Y. 447.

7. It is contended that section 10 of the Annexation Act violates certain constitutional provisions relating to taxation and municipal indebtedness. The section reads as follows:

" Sec. 10. Whenever in pursuance of this act any town or city existing under general laws shall be annexed to any city existing under a special charter, all rights, causes of action, records, uncollected revenues and other property of the town or city so annexed shall accrue to and become the property of the city so enlarged; and all valid indebtedness of any

town or city so annexed, and of the city existing under a special charter, shall be paid by general taxation upon all the taxable property within the city existing under a special charter, including the territory formerly included in the town or city so annexed. At least a proportionate share of the moneys of the city so enlarged, available for water service, lights and other public improvements, shall be expended each year within the territory formerly included within the town or city so annexed, based upon the assessed valuation thereof; and the water and light service of any town or city so annexed shall not be curtailed after such annexation." Session Laws, 1893, p. 455.

Unless the foregoing section conflicts with some express provision of the constitution, there can be no doubt of its wisdom and propriety. Speaking upon this subject, Mr. Justice Dillon says :

"It is usual, however, for the legislature, on the change or division of municipal and public corporations, to make provision concerning existing indebtedness; and its power to do so, unless restrained by special constitutional provision, is clear and ample." 1 Dillon Mun. Corp. § 173.

The constitutional provisions which section 10 of the Annexation Act is supposed to violate will be briefly noticed.

Of art. 10, sec. 7 : It is a sufficient answer to the objection based on this section to remark that the general assembly has not by section 10 of the Annexation Act undertaken to "impose taxes for the purposes of any county, city, town or other municipal corporation." On the contrary, it has by said section vested in the corporate authorities of the surviving city the power to assess and collect taxes throughout its entire extent, including its enlarged boundaries, for all the purposes of such enlarged corporation.

Of art. 11, sec. 1 : This section is to be construed as prohibiting a town or city by its own voluntary corporate act from pledging its credit to, or becoming responsible for, any debt, contract or liability in aid of a third party. Certainly, in the case at bar, the town of Valverde is not called upon

to pledge its credit to, or become responsible for, any person, company or corporation.   If annexation takes place, the town of Valverde ceases to exist as a municipal corporation.   It is true, that by annexation the city of Denver becomes responsible for the municipal indebtedness of Valverde, if any there be existing when annexation takes place; but by annexation the territory of Valverde is added to the city of Denver, and becomes, *ipso facto*, an integral part of its new and enlarged boundaries, and so the indebtedness for which the enlarged city becomes responsible is its own indebtedness for and on its own account, and is no longer a debt or obligation of a third party.   It may be observed also in this connection that the corporate property of Valverde in case of annexation becomes the property of the enlarged city the moment annexation takes place.

Of art. 11, sec. 8: It is contended that section 10 of the Annexation Act contains a threefold violation of this section. The argument is, that it affects, or may affect, the rights of the town of Valverde, of the city of Denver, and of the creditors of both municipalities.   It is true, taxation of property situate in the territory formerly embraced within the corporate limits of Valverde or of the city of Denver may be increased or decreased by annexation, though it is not made to appear that there will be any change.   In any event, section 8 does not contain any guaranty that there shall be no increase of taxation in case of the enlargement of municipal boundaries, nor has our attention been called to any other constitutional provision to that effect.

By annexation no debt is contracted *by loan* either by the town of Valverde or by the city of Denver, nor is any debt contracted at all by the town of Valverde as a municipal corporation since the town, as such, ceases to exist as soon as dissolution and annexation take place.   The annexation of Valverde may increase, or it may decrease, the taxes of those owning property situate within the original limits of Valverde or of Denver; it may, or may not, subject property within such limits to pre-existing municipal indebtedness; in any

event, these circumstances constitute no legal or constitutional objection to annexation. Objections to, as well as arguments for, annexation based upon such supposed increase or decrease of taxation, rest wholly upon grounds of expediency, and do not affect the legal or constitutional rights of either municipality, or of the residents thereof. Upon this subject Judge Dillon speaks with his usual clearness as follows :

"Not only may the legislature originally fix the limits of the corporation, but *it may, unless specially restrained by the constitution, subsequently annex,* or authorize the annexation of, contiguous or other territory, and this without the consent, and even against the remonstrance, of the majority of the persons residing in the corporation or on the annexed territory. And it is no constitutional objection to the exercise of *this power of compulsory annexation* that the property thus brought within the corporate limits will be subject to taxation to discharge a pre-existing municipal indebtedness, since this is a matter which, in the absence of special constitutional restriction, belongs wholly to the legislature to determine." 1 Dillon Mun. Corp. (4th ed.) § 185.

The rights of creditors are amply protected by the annexation act. They have the joint resources of the two municipalities as security for the municipal indebtedness of each. They have a responsible municipal government upon which every kind of legal process may be had for the collection and enforcement of their respective claims. In case of antecedent indebtedness contracted by loan in pursuance of an ordinance of any town or city, such ordinance, by virtue of the constitution, survives all changes of organization, government, or boundaries, which may befall the municipality, until such indebtedness shall have been fully paid and discharged. In case such town or city be dissolved by annexation to another, the municipal officers of the surviving corporation may be compelled by *mandamus* to levy and collect taxes for the payment of such indebtedness, the same as if they were officers of the original corporation.; and for the purpose of more

completely protecting, paying and discharging such indebtedness, such officers may, if necessary to the security of creditors, be required to levy, collect and keep separate the taxes collected from the property situate within the limits of the original municipalities respectively, any law of the state to the contrary notwithstanding. The Constitution of the United States provides that *no state shall pass any law impairing the obligation of contracts.* This applies to the constitutions of the several states as well as to statutes enacted by state legislatures. The constitution of this state contains a similar provision.

It is true, section 3 of article 10 of our Constitution provides that " all taxes shall be uniform upon the same class of subjects within the territorial limits of the authority levying the tax." In view of this provision, it is urged with much force that the annexation act cannot be upheld, since the contingency may occur in which the municipal authorities of the enlarged city may have to depart from the uniformity rule in levying taxes. For example, original Valverde property may have to be subjected to a certain rate of taxation to meet original Valverde indebtedness, while original Denver property may have to be subjected to a different rate of taxation to meet original Denver indebtedness. Remote and improbable as such a contingency may be, nevertheless, if it should occur, all state laws, constitutional as well as statutory, would have to give way to the paramount rule that no state law can be suffered to impair the obligation of contracts ; and thus the uniformity rule of taxation might be partially suspended in order to maintain contract obligations. But we need not for this reason hold section 10 of the Annexation Act void. The rule prescribed in that section may be followed, unless some creditor, for the purpose of enforcing the payment of his loan contracted in pursuance of an *irrepealable* ordinance, should invoke the rule specified in section 8 of article 11 of the Constitution. In such case, the municipal authorities of Denver might be compelled to act as officers of the original town of Valverde, or of the original city of Denver (as such

town or city existed when such loan was contracted), and in such official capacity might be required to levy and collect taxes from such original municipality and apply the same to the payment of such loan ; this section of article 11 being connected with the obligation of the loan would be held superior to section 3 of article 10, as well as superior to the annexation statute.    Contract obligations are of paramount importance.    1 Dillon Mun. Corp. (4th ed.) §§ 170 to 174, inc.; Cooley's Const. Lim. (6th ed.) p. 351 ; *Mount Pleasant v. Beckwith*, 100 U. S. 514 ; *North Yarmouth v. Skillings*, 45 Me. 133 ; *Blanchard v. Bissell, supra ; McGurn v. Board of Education*, 133 Ills. 122 ; *County of San Mateo v. Railroad Co.*, 13 Fed. Rep. 722 ; 8 *Am. & Eng. R. R. Cases*, p. 1 ; *People v. Mayor of Chicago*, 51 Ills. 36 ; *In re Town of Flatbush*, 60 N. Y. 406 ; *People v. Morgan*, 90 Ills. 566 ; *Meriwether v. Garrett*, 102 U. S. 473.

Of art. 15, sec. 12 : The annexation act is not obnoxious to this section.    A legislative act whereby one municipal corporation becomes annexed to another, forming one consolidated town or city, the surviving municipality assuming all the corporate debts and taking all the corporate property of the annexed municipality, together with the authority to levy and collect taxes throughout the enlarged municipality, is not an act retrospect in its operation ; nor does it impose on the people of either municipality a new liability in respect to transactions or considerations already past.    The benefit accruing to the people of the surviving city is a present and prospective consideration, and is based upon a present and not upon a past transaction.    So, too, there is a present consideration accruing to the people of the annexed territory; they receive and enjoy the greater privileges and protection which the larger municipality affords, and at the same time are relieved from the burdens of an independent municipal government.

It is said that the provisions of the annexation act are not binding upon the city of Denver because the act does not provide for her assent to annexation either by popular elec-

tion or by a vote of her corporate officers. It is a sufficient answer for this case to say, that the city of Denver is not here complaining; nor do we intimate that an objection on her part would be of any avail; besides, just before the passage of the annexation act, an act was passed " to amend and revise the charter of Denver." The latter act expressly provides that any town or city contiguous to Denver may become a part of the latter city by dissolution and annexation. It is conceded that such revised and amended charter has already been accepted and put in operation by the city of Denver. Thus, the city of Denver has accepted in advance the annexation of contiguous towns and cities with all the burdens imposed by the annexation act. See Session Laws 1893, particularly the exception and proviso in section 2 on page 135.

We have endeavored, with due consideration, to review the objections presented against the constitutionality of the annexation act. While impressed with the rule that the act should be upheld, if, by any reasonable construction, its provisions could be harmonized with the constitution, we have endeavored, also, to bear in mind the rights of individuals. It should, however, be observed in this connection that the record in this case nowhere discloses the existence of any municipal indebtedness whereby the rights of individuals, either as taxpayers or creditors, are, or may become, involved by annexation. We have, however, considered such questions because it seemed expedient that they should, to some extent, be disposed of in a proceeding of this kind. If the constitutional objections in respect to taxation and municipal indebtedness, as presented upon this review, were to be held sufficient to defeat the present act, it is difficult to see how they could be obviated by any other legislative enactment. Thus, the unfortunate conclusion would be reached that two or more towns or cities in this state could not be annexed or consolidated, so long as there should be any indebtedness by loan existing against either of them.

The annexation act, so far as this review has extended,

appears to have been framed with care; and its provisions seem to be fair and just, as well as free from constitutional objection. The judgment of the county court will be reversed, and the cause remanded for further proceedings in accordance with this opinion.

*Reversed.*