THE STATE OF KANSAS, *ex rel.* JAMES S. GIBSON, *as County Attorney, etc.,* v. P. J. MONAHAN *et al.*

No. 14,627.   (84 Pac. 130.)

SYLLABUS BY THE COURT.

CONSTITUTIONAL LAW — *Elections* — *Property Qualifications* — *Drainage Districts.* The provision of the Kansas bill of rights that no property qualification shall be required for any office of public trust or for any vote at any election applies only to those offices and elections contemplated by the constitution, and does not prevent the legislature from authorizing the creation of drainage districts, the powers of which are to be exercised by directors who are required to be freeholders elected by the resident taxpayers.

Original proceeding in *quo warranto.* Opinion filed December 9, 1905. Demurrer to petition sustained.

*C. C. Coleman,* attorney-general, and *James S. Gibson,* county attorney, for The State; *W. R. Smith, Pratt, Dana & Black,* and *Waggener, Doster & Orr,* of counsel; *S. W. Moore,* and *Fred. H. Wood,* as *amici curiæ.*

*Keplinger & Trickett,* for defendants.

The opinion of the court was delivered by

MASON, J.: The Kansas legislature at its last session enacted a law (Laws 1905, ch. 215) permitting the creation of public corporations known as drainage districts, having power to take certain measures for the protection of property within their boundaries against injury from the overflow of natural watercourses; this power to be exercised by a board of directors, chosen by the resident taxpayers, who are authorized to call elections to vote upon propositions to issue bonds to meet the cost of any improvements undertaken. This action is brought in the name of the state, upon the relation of the county attorney, against the persons selected as the first directors of such a drainage district, which has been organized in Wyan-

dotte county, to oust them from the exercise of the duties attached by the statute to their office, upon the ground that the act referred to is wholly void because it conflicts with the Kansas constitution. The case is submitted on a demurrer to the petition.

The provisions of the act which are claimed to be in conflict with the fundamental law of the state are those prescribing the qualifications of directors and electors of the district. Section 13 provides:

"At all elections and meetings held under the provisions of this act, only persons twenty-one years of age who are taxpayers and residents of the district, regardless of sex, shall be entitled to vote."

Substantially the same language is also found in section 9. Section 8 reads:

"That all powers granted to drainage districts incorporated under the provisions of this act shall be exercised by a board of directors consisting of five persons, who shall be freeholders and actual residents of the district, who shall hold their offices for three years and until their successors are elected and qualified, and who shall be chosen at the time and in the manner hereinafter specified."

Section 7 of the bill of rights includes this restriction: "No religious test or property qualification shall be required for any office of public trust, nor for any vote at any election." (Gen. Stat. 1901, § 89.)

In behalf of the plaintiff it is asserted that the statute, in requiring directors of the district to be freeholders, and voters to be taxpayers, attempts to impose a property qualification for an office of public trust, and for a vote at an election, within the letter and spirit of the constitutional limitation quoted. The defendants maintain: (1) That the words "election" and "office," as here used in the constitution, relate only to elections and offices provided for in that instrument, and have no application to elections held in, or officers chosen for, a public corporation created by statute, such as a drainage district; (2) that, even if

the provisions attacked are invalid, they may be disregarded without impairing the effect of the remainder of the act. As the court agrees with the defendants in their first contention it will not be necessary to consider the second.

The question whether it is competent for the legislature to confine to taxpayers the right of voting at such elections as are provided by this act must be answered in the affirmative, upon the authority of *Wheeler v. Brady,* 15 Kan. 26. In that case this court upheld a statute giving women the right to participate in the election of school-district officers, notwithstanding the constitution in granting the general right of suffrage to male citizens only by necessary implication excluded females from its exercise. The decision was based upon the principle that the constitutional expressions concerning the privilege of voting were intended to apply only to those elections provided for by the constitution itself. In the opinion it was said:

"There is no school-district election or meeting provided for in the constitution; there is no provision as to how school-district officers shall be elected, appointed, or chosen; and we suppose no one will claim that they are, by the terms of the constitution, to be elected at either of the elections provided for in the constitution; hence it would seem that the legislature would have full and complete power in the matter; that the legislature might provide for the election or appointment of school-district officers as it should choose, when it should choose, in the manner it should choose, and by whom it should choose." (Page 32.)

The soundness of this decision is questioned by counsel for the plaintiff, who allege that it is out of harmony with the view prevailing elsewhere. It has, however, been frequently cited with approval in other jurisdictions. (See *State v. Cones,* 15 Neb. 444, 19 N. W. 682; *Plummer et al. v. Yost et al.,* 144 Ill. 68, 33 N. E. 191, 19 L. R. A. 110; *State, ex rel. Attorney-general, v. Dillon et al.,* 32 Fla. 545, 14 South. 383, 22 L. R. A. 124; *Harris v. Burr,* 32 Ore. 348, 52 Pac. 19,

39 L. R. A. 768; *State, ex rel. Mills, v. Board of Elections of City of Columbus et al.,* 9 Ohio C. C. 134.)

The cases of *Matter of Gage,* 141 N. Y. 112, 35 N. E. 1094, 25 L. R. A. 781, *The People, ex rel., v. English et al.,* 139 Ill. 622, 29 N. E. 678, 15 L. R. A. 131, and *Coffin v. Election Comm'rs,* 97 Mich. 188, 56 N. W. 567, 21 L. R. A. 662, turned upon different aspects of the question, but cited the Kansas case with approval, and in distinguishing it emphasized the force of the reasoning by which it was sustained.

While the following cases did not in terms refer to *Wheeler v. Brady,* 15 Kan. 26, they involved substantially the same question and decided it in the same way: *Buckner, &c., v. Gordon, &c.,* 81 Ky. 665; *Belles v. Burr,* 76 Mich. 1, 43 N. W. 24; *Mayor, etc., v. Shattuck,* 19 Colo. 104, 34 Pac. 949, 41 Am. St. Rep. 208; *Hanna v. Young,* 84 Md. 179, 35 Atl. 674, 57 Am. St. Rep. 396, 34 L. R. A. 55; *Spitzer v. Village of Fulton,* 172 N. Y. 285, 64 N. E. 957, 92 Am. St. Rep. 736; *Leflore County v. State, ex rel., etc.,* 70 Miss. 769, 12 South. 904.

It is true that there are cases which announce a contrary doctrine, but they are neither of so large a number nor of such cogency of reasoning as to shake the authority of the Kansas decision.  (See *St. Jo. & Denv. City R. R. Co. v. Buchanan Co. Ct.,* 39 Mo. 485; *State v. Constantine,* 42 Ohio St. 437, 51 Am. Rep. 833; *Black v. Trower & als.,* 79 Va. 123; *Allison v. Blake,* 57 N. J. Law, 6, 29 Atl. 417, 25 L. R. A. 480.)

The present case cannot be distinguished from the earlier one upon the ground that here the limitation invoked is express while there it was merely implied, or upon the ground that here the right of suffrage is restricted while there it was enlarged. It is universally held that the enumeration in a state constitution of the classes of citizens who shall be permitted to vote is to be taken as to all matters within the purview of the provision as a complete and final test of the right to the exercise of that privilege, and that the legislature

can neither take from nor add to the qualifications there set out. (15 Cyc. 281, 282, 298; 10 A. & E. Encycl. of L. 573, 576, 577.) The case of *Wheeler v. Brady,* 15 Kan. 26, was not decided upon the theory that the legislature might extend to women the right to vote for school officers because the constitution did not forbid such enlargement of the voting privilege there granted. On the contrary, the court assumed that the constitutional provision defining qualified electors as male persons of stated attributes operated to bar females from the exercise of the right there referred to as completely as though there had been an express prohibition to that effect, and that the legislature could no more enlarge any right of suffrage conferred by the constitution than it could restrict it. The determination reached was, therefore, necessarily based upon the doctrine that the constitutional rules concerning the right to vote have application only to such elections as are provided for in the constitution itself.

Nor can the present case be withdrawn from the operation of this doctrine by reason of the broad and unqualified language of the prohibition relied upon by plaintiff: "No . . . property qualification shall be required . . . for *any* vote at *any* election." Manifestly it is not necessary to construe this literally as applying to every election whatsoever. It doubtless would not be contended that the sentence relates to the election of the officers of a private corporation, although that is a matter over which the legislature exercises some control. (Gen. Stat. 1901, § 1288.) It would be superfluous to cite instances in which general language of this character has been given a restricted meaning. A typical example is presented in *Pape v. Capitol Bank,* 20 Kan. 440, 27 Am. Rep. 183, where the requirement that no banking law shall be in force until submitted to a popular vote is held to apply only to banks of issue. (See, also, *Fischer v. Moore,* 69 Kan. 191, 76 Pac. 403.) A reasonable interpreta-

tion of the clause here in question seems to confine its application to those elections provided for or referred to in other parts of the constitution. This is in accordance with the view taken of equivalent expressions in cases already cited. In *Hanna v. Young,* 84 Md. 179, the section of the Maryland constitution under consideration was as follows:

"All elections shall be by ballot; and every male citizen of the United States, of the age of twenty-one years, or upwards, who has been a resident of the state for one year, and of the legislative district of Baltimore city, or of the county in which he may offer to vote, for six months next preceding the election, shall be entitled to vote in the ward or election district in which he resides *at all elections* hereafter to be held in this state."

Of this section it was said in the opinion:

"It is contended on the part of the appellant that this section of the constitution plainly comprehends and includes within its express terms *all elections,* whether state or federal, county or municipal. Yet there is but one municipality mentioned in this section of the organic law, and in fact Baltimore city is the only municipality mentioned *eo nomine* in any part of the constitution. . . . Whilst the constitution (art. 3, § 48) authorizes and empowers the general assembly to create corporations for municipal purposes, it nowhere prohibits the legislature from imposing upon the qualified voters residing within the corporate limits of a town any reasonable restrictions it may deem proper, when seeking the exercise of the right of elective franchise in the selection of its officers. In this respect the power of the legislature is unlimited. The argument advanced at the hearing in this court is to the effect that the act in question is void because the constitution has conferred the right and prescribed the qualifications of all electors in this state, [and] the legislature is without authority to change or add to them in any manner. If the premises of this contention were correctly stated, the argument and sequence would undoubtedly be correct. But, as already observed, the constitution (art. 3, § 48) only in general terms au-

32—72 KAN.

thorizes the creation of corporations for *municipal purposes,* and leaves to the legislature the enactment of such details as it may deem proper in the management of the concerns of the corporation, or which may be regarded as beneficial in the government of the same. The constitution of this state provides for the creation of certain offices, state and county, which are filled, either by election or by appointment; and we regard it as an unreasonable inference to suppose that municipal elections held within the state (outside the corporate limits of Baltimore city) can be properly termed elections under the constitution, such as state and county elections; or that the framers of the constitution ever contemplated that article 1, section 1, of that instrument was intended to apply to municipal elections, such as the one now under consideration, which is the mere creature of statutory enactment. . . . It is only at elections which the constitution itself requires to be held, or which the legislature under the mandate of the constitution makes provision for, that persons having the qualifications set forth in said section 1, article 1, are by the constitution of the state declared to be qualified electors." (Pages 182, 183.)

The case of *Belles v. Burr,* 76 Mich. 1, involved the construction of a section of the Michigan constitution reading as follows:

"In all elections every male citizen; every male inhabitant residing in the state on the 24th day of June, 1835; every male inhabitant residing in the state on the 1st day of January, 1850, who has declared his intention to become a citizen of the United States, pursuant to the laws thereof, six months preceding an election, or who has resided in the state two years and six months, and declared his intention as aforesaid; and every civilized male inhabitant of Indian descent, a native of the United States, and not a member of any tribe,—shall be an elector, and entitled to vote; but no citizen or inhabitant shall be an elector or entitled to vote at any election unless he shall be above the age of twenty-one years, and has resided in this state three months, and in the township or ward in which he offers to vote ten days, next preceding such election."

The court said:

"While it must be conceded that no person can vote for the election of any officer mentioned in the constitution unless he possesses the qualifications of an elector prescribed by that instrument, it does not follow that none but such electors can vote for officers which the legislature has the right to provide for, to carry out the educational purpose declared in that instrument."   (Page 11.)

In *Mayor, etc., v. Shattuck,* 19 Colo. 104, the court, in interpreting a constitutional provision that certain persons should be entitled to vote "at all elections," said:

"It is manifest that some restriction must be placed upon the phrase *all elections,* as used in section 1, else every person having the qualifications therein prescribed might insist upon voting at every election, private as well as public, and thus interfere with affairs of others in which he has no interest or concern.   In our opinion the word *elections,* thus used, does not have its general or comprehensive signification, including all acts of *voting, choice,* or *selection,* without limitation, but is used in a more restricted political sense—as elections of public officers."

In *Spitzer v. Village of Fulton,* 172 N. Y. 285, the court said of a provision of the constitution giving citizens having certain qualifications the right to vote "for all officers that now are or hereafter may be elective by the people, and upon all questions which may be submitted to the vote of the people":

"The contention of the plaintiffs is that the provisions of chapter 269 contain a restriction upon the provisions of article 2 as to the right to vote for elective officers and upon all questions which may be submitted to the vote of the people, and, hence, are violative of its provisions.   The obvious purpose of that article was to prescribe the general qualifications that voters throughout the state were required to possess to authorize them to vote for public officers or upon public questions relating to general governmental affairs.   But we are of the opinion that that article was not intended to define the qualifications of voters upon questions relating to the financial interests or

private affairs of the various cities or incorporated villages of the state, especially when, as in this case, it relates to borrowing money or contracting debts." (Page 289.)

The Mississippi legislature enacted a stock law which was to become effective in each county upon being approved at a local election, to be participated in by voters having qualifications entirely different from those prescribed for electors by the constitution. The statute was attacked upon the ground that it sought to establish a property qualification for voting and to extend the right of suffrage to persons barred from its exercise by the constitution. In *Leflore County v. State,* 70 Miss. 769, the court said:

"The provisions of the constitution as to qualified electors, and registering electors, and the election ordinance adopted by the constitutional convention, have been appealed to as rendering unconstitutional the provisions of the code as to a stock law. We reject this view. There is nothing in the constitution or ordinances at war with the stock law. The legislature might pass a stock law for one or all the counties without a vote of the people on the subject. It might empower each board of supervisors to declare such law in force, without vote or petition of the people, and, having plenary power over the subject, was authorized to prescribe the conditions on which the boards might act." (Page 778.)

The elections referred to in the act under consideration were not provided for by the constitution, nor did the constitution impose upon the legislature any duty to make provision for them. They were not required to be held by reason of anything contained in the fundamental law of the state. The drainage district in question is wholly the creation of the legislature, which had practically unlimited discretion in the matter. The statute might have made the office of director appointive instead of elective, and might have made the issuance of bonds dependent upon the will of the taxpayers as indicated by petition instead of by vote. That the

The State v. Monahan.

selection of the officers who act for the corporation is decided by the usual electoral machinery, but by a restricted electorate, and that the concurrence of the taxpayers in a bonding proposition is expressed by means of an election, rather than by some other method, do not bring the case within the reason or within the true meaning of the clause of the constitution relied upon by the plaintiff. The elections held to choose officers of a drainage district or to pass upon the expediency of proposed improvements designed for protection against floods are not merely other elections than those provided for in the constitution; they are of a different character from any therein referred to, and so far dissimilar in their nature that it cannot be supposed that they were within the contemplation of the constitutional convention when the qualifications of electors were under consideration by that body.

It practically follows from the views already announced that the requirement that the directors of the district shall be freeholders is not in contravention of the constitutional limitation forbidding a property qualification for any office of public trust. The words "office of public trust" are equivalent to "public office." (*Ex parte Gregory Yale*, 24 Cal. 241, 85 Am. Dec. 62; *Conley v. State*, 46 Neb. 187, 64 N. W. 708.) The director of a drainage district is in a sense a public officer, but as his office is not one provided for by the constitution, nor even one of the same general character as any that are referred to in that instrument, it must be deemed not to be within the scope of the prohibition. The reasons for giving to the broad expression "any election" a restricted meaning apply with almost or quite equal force to the corresponding one—"any office of public trust." As the two phrases are used in the same sentence and in the same connection, it would hardly be reasonable to enforce the restriction in the one case and not in the other.

The demurrer to the petition is sustained.

All the Justices concurring.