In the Matter of the Cancellation of the Name of MATILDA
JOSLYN GAGE on Registry List of Election District, etc.

A school commissioner is a constitutional officer " elected by the People,"
  and so, under the State Constitution prescribing the qualification of
  voters (Art. 2, § 1), may only be voted for by " male citizens."
Accordingly *held*, that the act of 1892 (Chap. 214, Laws of 1892), conferring
  upon women the right to vote for school commissioners, is unconstitutional
On appeal from order striking the name of a woman from the registry
  list, *held*, that although the election had passed and so the possibility
  of the woman's voting was absolutely gone, the question was not purely
  an abstract one as the order determined her status under the act and
  settled her rights for future elections, and so the case presented required
  its determination.

(Argued January 15, 1894; decided January 16, 1894.)

APPEAL from order of the General Term of the Supreme
Court in the fourth judicial department, made November 21,
1893, which affirmed an order of a justice of the Supreme
Court, made at Chambers, striking the name of Matilda Joslyn
Gage from the registry list of the third election district of the
town of Manlius, Onondaga county.

The facts, so far as material, are set forth in the opinion.

*Louis Marshall* for appellant. The order appealed from
involves a substantial right. (*People* v. *Sturtevant*, 9 N. Y.
263; *Ashby* v. *White*, Ld. Raym. 938; 1 Smith's L. C. [9th
ed.] 464; *Green* v. *Shumway*, 39 N. Y. 418; *Goetcheus* v.
*Matthewson*, 61 id. 420; *Day* v. *Bach*, 87 id. 56; *Bradley* v.
*Fisher*, 13 Wall. 351.) Chapter 214 of the Laws of 1892, per-
mitting women to vote for school commissioners, is constitu-
tional. (Const. N. Y. art. 2, § 1; Id. art. 10, § 2; Laws of 1814,
chap. 142; Laws of 1856, chap. 179; Laws of 1864, chap. 555;
Laws of 1880, chap. 9; Laws of 1888, chap. 381; Laws of
1893, chap. 131; *People ex rel.* v. *Dayton*, 55 N. Y. 367;
*People* v. *H. Ins. Co.*, 92 id. 337; *Town of Southampton* v. *M.
B. O. Co.*, 116 id. 16; *Sweet* v. *City of Syracuse*, 129 id. 345,
350; *People ex rel.* v. *Westchester Co.*, 139 id. 524; *Fort* v.
*Burch*, 6 Barb. 73; *Belles* v. *Burr*, 76 Mich. 1; *Wheeler* v.
*Brady*, 15 Kans. 26; *State* v. *Cones*, 15 Neb. 444; *Plummer*

v. *Yost*, 33 N. E. Rep. 191; *People* v. *N. Y. & M. B. R. R. Co.*, 84 N. Y. 565; *East Oakland* v. *Skinner*, 94 U. S. 255; *T. Ins. Co.* v. *Hamilton*, L. R. [12 App. Cas.] 484; *Sturgis* v. *Spofford*, 45 N. Y. 446; *In re Carboy*, 27 Hun, 82; *Ogden* v. *Saunders*, 12 Wheat. 270.)

*W. P. Goodelle* for respondent. Chapter 9 of the Laws of 1880 does not confer eligibility to the office of school commissioner upon females. (8 N. Y. 253; *In re Mayor, etc.*, 99 id. 577; Cooley on Const. Lim. 148.) But if it should be held that the act of 1880 did intend to and does authorize women to hold the office of school commissioner, and that the act of 1892 did intend to and does attempt to confer upon women the right to vote for school commissioner, then the law of 1892 is in contravention of our State Constitution. (Const. N. Y. art. 2, § 1; Id. art. 10, § 2; *People* v. *Barber*, 48 Hun, 195, 198, 201; *Spencer* v. *Board of Registration*, 1 McA. 169; *U. S.* v. *Anthony*, 11 Blatchf. 200; *People* v. *Pease*, 27 N. Y. 45, 52, 53; *People ex rel.* v. *English*, 29 N. E. Rep. 678; *Green* v. *Shumway*, 39 N. Y. 418; Cooley on Const. Lim. 77, 599; Laws of 1864, chap. 555; *People ex rel.* v. *McKinney*, 52 N. Y. 374; *People* v. *Draper*, 15 id. 532.)

FINCH, J. The question argued on this appeal is whether a woman may vote for school commissioner in her proper district within the state, and it arose in this manner: An act of the legislature (Laws of 1892, chap. 214) provides that " All persons without regard to sex, who are eligible to the office of school commissioner and have the other qualifications now required by law, shall have the right to vote for school commissioner in the various commissioner districts of the state." The act further requires that the persons so entitled to vote shall be registered " as provided by law for those who vote for county officers;" that the county clerk shall prepare and distribute the prescribed ballots, and the inspectors of election shall receive and count the same. Acting under this authority Mrs. Gage was duly registered in the third election district of the town of Manlius on October 21st, 1893. The board of

inspectors were formally requested to remove her name from
the registry, but refused to comply with the demand, where-
upon an application was made to a justice of the Supreme Court
pursuant to section 37, chapter 680 of the Laws of 1892, to
strike her name from the registry, on the sole ground that she
was not a lawful voter by reason of her sex. That applica-
tion was granted, the learned judge holding that the act con-
ferring upon her the right to vote for school· commissioner
was unconstitutional. The inspectors obeyed the order. Mrs.
Gage appealed to the General Term, where it was affirmed,
and from that affirmance brings her appeal to this court.

While it is true that the election of 1893 has passed, and
the possibility of voting on that occasion is absolutely gone,
it does not necessarily follow that the question involved has
become purely abstract and divested of any practical results
consequent upon its decision. The order made determined
the *status* of the voter under the act of 1892, and settled her
right for future elections; and if a wrong has been done it is
not easy to discover any practical remedy except through a
reversal of the order which was granted. Both parties concur
in seeking a final decision upon the constitutional question
involved, and we are of opinion that the case presented
requires of us its determination.

The learned counsel for the appellant states very frankly
and accurately the sole inquiry upon which the decision
depends. He concedes that under article 2, § 1, and article
10, § 2 of the Constitution, no woman has the right to vote for
constitutional officers, because the franchise is conferred
explicitly upon "male citizens;" but he contends that school
officers are not such constitutional officers, because the practi-
cal interpretation of that instrument has long and invariably
been to the contrary. That is true and only true of the officers
of the school district,. as the fundamental unit of the school
system. The trustees of such a district are the authorized
business managers of the school within its boundaries, and the
legislature has always assumed, and been permitted to assume,
the right to determine who might vote for such trustees, and

what qualifications should or should not be requisite and necessary. To that class of school officers intrusted with the government and control of the simple school district, by itself alone and within its own boundaries, the constitutional provisions have never been applied; but I have yet to find an instance in the statutory history of the state prior to the act in question, where an officer whose authority was not confined to the school district, but extended over many of them, with a power of superintendence and control, has been regarded as anything other than a town or county officer and within the constitutional provisions. Under the Revised Statutes the superintending officers were three commissioners and three inspectors of common schools. (1 R. S. p. 340, § 3.) These were town officers, to be chosen by the constitutional electors (§ 1) and by ballot. (Id. 343, § 2.) In 1843 these officers were abolished (Chap. 133, § 1), and in their place was substituted (§ 2) a town superintendent of common schools, to be annually elected in the same manner as "other town officers" are chosen, and upon whom the duties of inspection and superintendence were imposed. He also was a town officer and chosen by the constitutional electors. In 1864 (Chap. 179) the system was again changed by providing first for the appointment and then for the election of school commissioners. The terms of the statute show that they were still regarded as within the constitutional provisions, and were county officers, as their predecessors had been town officers. Where a county constituted a single assembly district the supervisors were to choose "for their county" an officer to be called school commissioner. (§ 1.) Where a county had more than one assembly district a commissioner for each of such assembly districts was to be chosen. (§ 2.) So far the office created pertained to the known constitutional divisions of the state, and its incumbent was clearly a county officer. The situation was not changed by the further provision allowing in a single county constituting but one assembly district the selection of two commissioners, and dividing the county into sections for that purpose. (§ 4.) No town was to be divided in the process, and the commissioner of one sec-

tion could discharge his official duty in the other section upon the written request of its commissioner. (§ 7.) Under the act of 1864 (Chap. 555, title 2, § 11) he is required to do so upon the command of the superintendent of public instruction. Under the law of 1856 the appointment by the boards of supervisors was but temporary. At the annual general election of 1857 the officers became elective, and it was provided that "all the provisions of law relating to the mode of voting and of canvassing the votes for the county officers shall apply to and govern the election of such commissioners." If it be a just criticism that this provision was merely modal, that may have furnished a reason why, for a plainer exposition of the intended meaning, the language was changed in the General Act of 1864. It there reads (§ 3, title 2): "The laws regulating the *election* of, and canvassing the votes for, county officers shall apply to such elections." Who may vote for county officers is an essential part of the laws "regulating" their election, for it has been held that into those laws is to be read the constitutional definition of an elector as if it had been specially repeated therein. (*People* v. *Barber*, 48 Hun, 198.) It follows that there are two definite and distinct classes of school officers, which are those of the school district, the unit of the system, and those of superintendence over a larger or smaller number of such units aggregated; and that the latter are and always have been as clearly either town or county officers as the former have not been. I am unable to see, therefore, that any practical construction, prior to the act of 1892, has ever been given to the Constitution which takes the elective officers charged with superintendence out of the category of constitutional officers, or puts a constituency behind them having other qualifications than those necessary for the election of town and county officers.

The Constitution, in article second, section one, prescribes the qualifications of voters "for all offices that now are or hereafter may be elective by the people," and confines the franchise specifically to "male citizens." The office of school commissioner was one thereafter made "elective by the

people" through the operation of the alternative given by article ten, section 2, which provides that " all officers whose offices may hereafter be created by law shall be elected by the people or appointed as the legislature may direct." That is, in such cases it may choose between election and appointment, and in the latter event may dictate the authority and mode of appointment. The legislature chose that the office should be elective, and becoming such, it fell within the scope and terms of the constitutional provisions applicable to elections by the people. The only possible answer is the one which was attempted and derived from a supposed practical construction. We have seen that the facts do not justify that answer. Indeed, the cases cited from other states do not go far enough to support the appellant's argument. In *Belles* v. *Burr* ('76 Mich. 1) the question was over the election of a school district trustee. In *Wheeler* v. *Brady* (15 Kansas, 26) the controversy concerned a school district treasurer. In *State* v. *Cones* (15 Neb. 444) the voting was at a school district meeting. In *Plummer* v. *Yost* (33 N. E. Rep. 191) the election was of members of the board of education. And the opinion of the judges (115 Mass. 603) related to the right of a woman to be a member of a school committee. On the other hand, when the question arose in Kansas, not of voting at a school district meeting, but for a county superintendent of schools, the court deemed it almost too clear for argument that a woman could not vote for the latter officer. ( *Winans* v. *Williams*, 5 Kansas, 227.)

It seems to me needless to prolong the discussion. A constitutional convention may take away the barrier which excludes the claimed right of the appellant, but until that is done we must enforce the law as it stands.

The order should be affirmed, but, as stipulated, without costs.

All concur.

Order affirmed.