THE PEOPLE OF THE STATE OF NEW YORK ex rel. EDWARD M. GORING, Respondent, v. THE PRESIDENT AND BOARD OF TRUSTEES OF THE VILLAGE OF WAPPINGERS FALLS, Appellants.

*Chapter 680 of 1892 — right of a voter to vote for a person for an office not named on the official ballot — unconstitutionality of laws prohibiting it — police justice of the village of Wappingers Falls — the Supreme Court has no power to direct the trustees of such village to allow an annual salary to him.*

Section 104 of the Election Law (Chap. 680 of the Laws of 1892) must be construed to give a voter the right not only to vote for any person for an office named on the official ballot, but also for an office which ought to have been named thereon, but which has been omitted therefrom by the neglect of the official charged with the duty of its preparation. (DYKMAN, J., dissenting.)

The right to vote at an election is derived from the Constitution; the manner of voting is regulated by statute; the constitutional provision that "Every male citizen of the age of twenty-one years * * * shall be entitled to vote" at all elections confers the right to vote for a person for every office required by law to be filled at the election at which the voter desires to vote, and any law which prohibits him from so voting is unconstitutional. (DYKMAN, J., dissenting.)

The right of a voter to vote for a candidate at any election is not dependent upon the performance or non-performance of the duty of the officer charged by chapter 680 of the Laws of 1892 with the preparation of the official ballot. (DYKMAN, J., dissenting.)

The fees of the police justice of the village of Wappingers Falls are a charge upon the village, and must be audited and allowed in the same manner as other village charges, unless such police justice shall be allowed an annual salary fixed by the board of trustees of the village which is empowered to fix and establish an annual salary to be paid to the police justice by resolution to be entered in its minutes, which salary when so fixed is in lieu of fees to which the justice might otherwise be entitled. The discretion is vested in the board of trustees of the village to determine between the two modes of compensation, and it is beyond the province of the Supreme Court to determine the exercise of such election by such board of trustees.

APPEAL by the defendants, The President and Board of Trustees of the Village of Wappingers Falls, from an order of the Supreme Court, made at the Dutchess Special Term and entered in the office of the clerk of the county of Dutchess on the 30th day of June, 1894, granting the relator's motion for a peremptory writ of mandamus, directed to the president and board of trustees of the village of Wappingers Falls requiring them to forthwith provide the relator as police justice of said village the necessary blanks and stationery for the business of his office, that they provide and designate a suitable place for the holding of the sessions of court in connection with the office of such police justice, and that they fix and determine an annual salary for the services of the relator as such police justice commensurate with the duties of such office.

*Joseph F. Barnard*, for the appellants.

*Bernard J. Tinney*, for the respondent.

BROWN, P. J.:

The facts out of which this case arose are correctly stated in the opinion of Justice DYKMAN, and need not be here repeated. The question presented is whether a duly qualified voter may vote for a person for an office which is not named on the official ballot, but which exists by statute, and is required to be filled at an election at which the voter desires to vote. Section 104 of the Election Law (Chap. 680, Laws of 1892) provides that within the voting booth " the name of any person for whom the voter desires to vote for any

office named on the official ballot may be written on the official ballot which the voter proposes to vote; or a paster containing one or more such names or offices may be pasted thereon." The Ballot Reform Law of 1890 (Chap. 262, § 25) provided that " The voter may write or paste upon his ballot the name of any person for whom he desires to vote for any office." But under section 104 of the present law, it will be observed that the right to write or paste upon the ballot the name of any person for whom the voter desires to vote, is apparently limited to the offices named on the official ballot. In the case before us the office of police justice was not named on the official ballot. The office had, however, been created by law, and it was required to be filled at the village election. There had, however, been no incumbent of the office for the greater part of the expiring term, and no nominations had been made for it, and the fact that it was to be filled was probably overlooked by the officers and the great majority of electors of the village. It was, nevertheless, by section 82 of the Election Law, made the duty of the clerk of the village to furnish official ballots containing the names of all the offices to be filled at the election, and the name of the office of police justice should have been upon the ballot. We are of the opinion that section 104 must be construed to give to the voter the right, not only to vote for any person for an office named on the ballot, but also for an office which ought to have been named thereon, but which had been omitted therefrom by the neglect of the officer charged with the duty of its preparation. The right to vote at an election is derived from the Constitution; the manner of voting is regulated by statute. The constitutional provision is that " Every male citizen of the age of twenty-one years  *  *  * shall be entitled to vote" at all elections. This provision confers the right to vote for a person for every office required by law to be filled at the election at which the voter desires to vote. The Constitution contains no restriction upon this right, and the only express power given to the Legislature in reference to it is to enact laws "for ascertaining by proper proofs the citizens who shall be entitled to the right of suffrage." There is, of course, an implied power to regulate the manner of voting, but any law which prohibits the right to vote is unconstitutional. The present Election Law has provided for the preparation of an official ballot by certain desig-

nated officers, and it makes it their duty to print the names of all offices to be filled upon the face of each and all of the official ballots. This duty is in no wise made dependent upon the making of nominations, it being further provided by section 82 that if the full number of candidates for the offices specified on any one kind of ballot shall not have been nominated " *   *   * blank spaces shall be left on each ballot of such kind where the names of candidates would appear, except for such failure to nominate."

The intention of the Legislature is plain.   It is that there shall be printed upon the official ballot the name of every office to be filled at the election, and if this duty is performed by the officer charged with it, the voter, under section 104, is enabled to exercise his constitutional right to vote for any person he chooses for any office to be filled at the election.   It is equally plain that the Legislature did not intend that this right should depend upon the performance or non-performance of the duty of the officer charged with the preparation of the official ballot.   Yet that is what the argument of the appellants comes to.   The voter, it is said, may vote for any person for any office named on the ballot, but if, through inadvertence, neglect of duty or other cause, the name of the office is omitted from the ballot, no vote can be cast for any person for that office, and no election for that office can be held.   Such a construction, if it could be adopted, would disfranchise the voter and deprive the people of the right of the proper administration of their laws.   But it cannot prevail, as it would make the law unconstitutional.   The original Ballot Reform Law, when introduced in the Legislature in 1888, contained a provision which permitted the voter to vote only for a candidate duly nominated and certified, but that provision was rejected, and, in the discussion that then and since has been had upon the question, it has been the almost unanimous opinion of the lawyers of the State that any law prescribing an official ballot which did not permit the voter to write or paste upon his ballot the name of any person for whom he desires to vote for any office to be filled at the election, whether named on the official ballot or not, would be in violation of the provision of the Constitution hereinbefore quoted.

Our conclusion, therefore, is that the votes cast for the relator were valid, and that he was duly elected to the office of police justice of the village.   We agree with Justice DYKMAN that the Special

134 PEOPLE ex rel. GORING v. PRESIDENT, ETC.

SECOND DEPARTMENT, DECEMBER TERM, 1894.          [Vol. 83.

Term had no power to direct the trustees of the village to fix the salary of the office. We have the power to modify the order, however (*People ex rel. Hasbrouck* v. *The Supervisors*, 135 N. Y. 535), and that part of it should be stricken out, and, so modified, it should be affirmed, without costs of appeal.

CULLEN, J.:

I agree with the opinion of the presiding justice that an interpretation of section 104 of the Election Law which would limit the right of voters to vote only for offices which may be named on the official ballot, or only for candidates who may have been put in nomination by the modes prescribed by that law, would render this provision of the section unconstitutional and void. The section is general and applicable to election for all offices. As to two classes of public offices it seems to me too clear for debate that the Legislature cannot deny the voter the right to vote nor can it make the qualifications prescribed for candidates dependent on the action of election officials or nominating conventions.

By the Federal Constitution (§ 2, art. 1):

" 2. No person shall be a representative who shall not have attained to the age of twenty-five years, and been seven years a citizen of the United States, and who shall not, when elected, be an inhabitant of that State in which he shall be chosen."

By section 4 of the same article:

" 1. The times, places and manner of holding elections for senators and representatives shall be prescribed in each State by the Legislature thereof; but the Congress may at any time, by law, make or alter such regulations, except as to the places of choosing senators."

Congress has acted under this authority and prescribed the time of holding elections for representatives. How can the State deny the right of any qualified voter to vote at the time prescribed? As to the qualifications of representatives though the constitutional provisions are wholly in the negative, still they are plainly meant to prescribe the only conditions of eligibility, and are exclusive. How can the State prescribe that the candidates must have been nominated by a certain number of voters for an appointed period before the election? Such provisions would not relate merely to the man-

ner of holding the election but would plainly be limitations on the eligibility of the candidate. He may not have moved into the State and become an inhabitant thereof until the day before election, and yet he would be constitutionally eligible for the office.

These considerations also apply to those officers which the Constitution of the State ordains shall be filled by election. At an early period under our present Constitution the question arose whether the election of a justice of the Supreme Court to fill a vacancy occurring after the notice given by the Secretary of State of the offices to be filled at the approaching election was valid. It was held that the election was valid, notwithstanding that no notice thereof had been given by the Secretary of State. (*People ex rel. Davies* v. *Cowles*, 13 N. Y. 350.) The authority of this case has never been questioned. In the Constitutional Convention of 1867 it was acknowledged as a correct exposition of the law, and to avoid any difficulty from lack of sufficient notice to the voters, the Constitution was amended so that vacancies in the judicial offices created by it are directed to be filled only at elections happening three months after the occurrence of the vacancy. But as to other elective offices of the Constitution the old rule remains in force.

As to offices not constitutional, but created by the Legislature, the Legislature may prescribe qualifications for the incumbents of such offices. (*People* v. *Platt*, 117 N. Y. 159.) We assume, however, that as to such offices the qualifications must bear some relation to the duties of the office, and be not merely arbitrary. The office here in dispute is a local office. By the Constitution it must be filled by election or appointment as the Legislature shall direct. Under this authority the Legislature determined that the office should be elective, and on that determination the office "fell within the scope and terms of the constitutional provisions applicable to elections by the people." (*Matter of Gage*, 141 N. Y. 112.) A scheme that would permit the town election officers or nominating conventions to determine whether the office should be filled or not would be neither providing for an election nor for an appointment, and it is only one of these two methods that the Legislature can adopt.

The order appealed from should be affirmed, with ten dollars costs.

DYKMAN, J. (dissenting) :

Under a republican form of government, such as ours, the fundamental principle is that all political power is vested in the people. In a general way it is said that the people are the sovereigns, but in strictness of language the aggregate collected will of the people is the sovereign authority.   It follows, therefore, that every man has the right to participate in the exercise of the sovereign power by the exertion of the right to vote for representatives.   That is the portion of political power belonging to every qualified elector.

But the people have placed limitations and restraints upon themselves in the exercise of the elective franchise.   They have prescribed certain forms for the conduct of elections.   They have declared that they themselves cannot vote without certain qualifications, nor except at specific times and places, and in a particular manner.

The controversy in this case has reference to the limitations placed upon the qualified electors by the late Election Law of this State. The facts in the case are these :

This is an appeal from an order made at the Special Term, granting a peremptory writ of mandamus against the president and trustees of the village of Wappingers Falls, commanding them to recognize the relator as police justice of that village, and to fix his salary as such.

- The village of Wappingers Falls is incorporated under the general act for the incorporation of villages (Chap. 291, Laws of 1870), and section 17 of that act, as amended by chapter 688, Laws of 1871, provides that, " The trustees   *   *   *   may, whenever in their opinion the public interest demands it, at any time not less than thirty days preceding the next annual election for village officers, direct that at such election, and at every fourth annual election thereafter, there shall' be elected a police justice, who shall be a resident of the village in which he shall be elected, and who shall hold office for four years."

In 1890, in pursuance of that statute, the trustees passed a resolution that a police justice be elected in that village in the spring election of 1890, and every four years thereafter.   A police justice was elected at that time who, shortly after his election, resigned his office, and there was no order for an election to fill the vacancy at the next election, and no police justice was ever elected or appointed thereafter.

In 1894 the trustees gave a notice of the election of the village officers, but did not specify the office of police justice among them.

The political parties nominated candidates, but no nomination was made for police justice by either of such parties, or by certificate. The official ballots were printed by the village clerk, and distributed in due time. No official ballot containing either the designation of the office of police justice as one to be voted for, or the name of any candidate therefor, was printed. When the votes were counted there appeared on forty-four of the regular official ballots, by a paster slip, the following: "For police justice, Edward W. Goring." The question is whether the relator was duly elected to the office he claims, and that question must be determined by the General Election Law. Police justices in villages are elective officers. Both political and independent nominations for municipal offices must be filed with the clerk of the village. (Election Law, chap. 680, Laws of 1892, § 82.)

There must be as many official ballots as there are names represented upon the certificates filed. (§ 82.)

The scheme and policy of the Election Law, as applicable to this case, is to require official ballots for all elective offices to be voted for at the village election, to be furnished by the village clerk (§ 86), and no ballot except one bearing the official indorsement shall be counted. Every elector is, therefore, compelled to vote an official ballot if he votes at all. After he enters the voting booth, and not before, nor elsewhere, "the name of any person for whom the voter desires to vote for any office named on the official ballot, may be written on the official ballot which the voter proposes to vote, or a paster containing one or more such names or offices may be pasted thereon; or a paster ballot containing the names of all the candidates for whom the voter may vote for all such offices may be pasted thereon." (§ 104.)

It thus appears that the voter is confined to writing or pasting the name of any person for whom he desires to vote to an office named in the official ballot. In other words, he can only vote for a person for an office designated upon the official ballot. This construction results from the application of the maxim *expressio unis est exclusio alterius*. The thing expressed here as permissible is the

writing or pasting upon the official ballot the name of any person for whom the voter desires to vote for an office named thereon. That provision implies the exclusion of other methods and inhibits the voting for an office not named on the official ballot. The general argument that such a construction may disfranchise an elector or prevent the exercise of his volition is not forceful.

It is admitted by all that none but official ballots can be cast, and if there be no ballots for an office except in emergencies not presented in this case, it follows that no votes can be deposited therefor.

Such we deem to be the effect of the Election Law ; and as neither of the official ballots at the election where the relator claims he was elected contained the name of the office of police justice, it follows that the votes cast for him were improperly counted and gave him no right to the office.

We think, also, that the command of the writ was too broad. It undertakes to command the trustees to fix the salary of the police justice, and our understanding of the statute in relation to the compensation of such police justice is, that his fees are a charge upon the village, and must be audited and allowed in the same manner as other village charges, unless such police justice shall be allowed an annual salary fixed by the board of trustees, and they were empowered to fix and establish an annual salary to be paid to the police justice by resolution to be entered in their minutes, which salary when so fixed was to be in lieu of fees to which the justice might otherwise be entitled, and it left the alternative between the two modes of compensation to the discretion and determination of the trustees, and it is beyond the province of the court to compel the exercise of such election.

In other words, the court had no power to compel the trustees to fix the salary of the police justice under the statute. The sole power to create a salary or let the compensation depend on the village charter, rested on the trustees.

The order appealed from should be reversed, with ten dollars costs and disbursements, and the motion for a mandamus denied, with ten dollars costs.

