Shauck, J.
The demurrer must be sustained if the act set out is valid. By its terms the right is conferred upon women to vote only for school directors, members of the board of education or school council.
Against the validity of the act it is urged that the general assembly is without power to extend the right of suffrage beyond the terms of section one, article five, of the constitution: “ Every white male citizen * * * shall have the qualifications of an elector and be entitled to vote at all elections.”
There seems to be no occasion to doubt that only those who have the constitutional qualifications of electors can participate *136 in elections held to fill the offices which the constitution itself has created. This is, in some states, held to be the extent of the constitutional restriction! But it is contended that in this state the legislature eannot authorize persons not having the constitutional qualifications of electors to participate in the selection of any officer who is to be chosen by the forms of a popular election. This claim, counsel for the relator think, is consistent with their admission that the legislature mightauthorize wmmen to participate in the choice of these school officers if a differentlmode of choosing were adopted — that is, women may be authorized to choose, but not to eleet. These terms are English and Latin equivalents ; but the distinction made is said to be recognized in State ex rel. v. Constantine, 42 Ohio St. 437, where it is held that “ a statute authorizing the election of four members of the police board at the same election, but which denies to an elector the right to vote for more than two members, is in conflict with article five of the constitution,” although the offices to be filled were not created by the constitution. That act did not attempt to extend the right to vote to -any who had not the constitutional qualifications of electors. The vice of the act, in the opinion of the court, was that in the election of municipal officers it denied the right of constitutionally qualified electors to vote for the whole number of officers to be chosen. It is clear that the act now under consideration is not within the terms of that decision, whether within its principles or not.
In the determination of that case no consideration appears to have been given to the State ex rel. v. Cincinnati, 19 Ohio 178, which arose under our former constitution. Counsel do not point out any substantial difference between the provisions of the constitutions of 1802 and 1851, so far as they affect this question, and we perceive none. It is not doubted that prior to the abrogation of the qualification of color, that and the qualification of sex were of equal importance in the constitutional view.
In that case the court was called upon to determine wheth *137 er an act which provided for colored schools in Cincinnati, and the election of colored directors by colored voters, was valid. Notwithstanding the provisions of article four of the constitution then in force, defining an elector to be “ a white male inhabitant,” the act was held valid, for the reason that “ the whole subject of organizing and regulating schools had been left to the general assembly, in the exercise of its legislative powers.
These questions have been determined by the Supreme Court of Michigan under constitutional provisions that are certainly not more favorable to the power of the legislature to pass an act of this character than are ours. In the case of Coffin et al. v. The Election Commissioners, etc., 97 Micb. 188, it was held in accordance with .the doctrine of State ex rel. v. Constantine, that the general assembly cannot confer upon women the right to vote for the officers of cities and villages. In Belles v. Burr et al., 76 Mich. 1, it was held in accordance with the doctrine of The State ex rel. v. Cincinnati, that the legislature may confer upon women the right to vote for officers charged with the management of the affairs of school districts. This conclusion is placed upon the ground that “the authority granted by the constitution to the legislature to establish a common or primary school system carried with it the authority to prescribe what officers should be chosen to conduct the affairs of the school districts, to define their powers and duties, their term of office, and how and by whom they should be chosen.” This result was reached although, as was shown in a'dissenting opinion, the election of other school officers is provided for by the constitution of that state.
Upon like reasoning acts of this character have been held valid in Nebraska ex rel. v. Cones, 15 Neb. 444; Wheeler v. Brady, 15 Kan. 26 ; Huff v. Cook, 44 Iowa, 639; Plummer et al. v. Yost et al., 33 N. E. Reporter, (s. c. Ill.) 191; Opinion of the Judges, 115 Mass. 602.
Counsel for the relator place much reliance on The Matter of the Cancellation of the name of Matilda Joslyn Gage on Reg *138 istry List, etc., 141 N. Y. 112. It was there held that an act which attempted to confer upon women the right to vote for school officers whose powers might be exercised throughout towns or counties was unconstitutional. But in the opinion it was said : “The trustees of school districts are the authorized business managers of the school within their boundaries, and the legislature has always assumed, and been permitted to assume, the right to determine who might vote for such trustees, and what qualifications should or should not be requisite.”
It must be admitted that the rule that persons not having the constitutional qualifications of electors may be authorized to vote at any election that is not held to fill an office created by the constitution does not obtain everywhere. In view of State ex rel. v. Constantine, it cannot be said to obtain in this jurisdiction. But it is believed that all the reported cases in which this limitation has been considered are consistent with the view that the ample powers for the establishment and maintenance of public schools which are conferred upon the legislatures by the constitutions of most of the states carry with them power to extend the right to vote for school officers to persons not within the constitutional definition of electors, unless such officers are designated by the constitution, or are officers of municipal or political divisions recognized by the constitution.
In none of the state constitutions to which, our attention has been called is there a broader grant of power to provide for public schools than in ours. Section one, article two, contains a grant of all legislative power. Section seven, article one, provides that “it shall be the duty of the general assembly to pass suitable laws * * * to encourage schools and the means of instruction.” Section two, article six, enjoins upon the general assembly the duty of making such provisions as “ will secure a thorough and efficient system of common schools throughout the state.” In the provisions relating to the subject of schools, there is neither *139 limitation upon the power conferred, nor direction as to the modes of its exercise. The offices to be filled at the elections contemplated in this act, and the districts in which such elections are to be held, are alike unknown in the constitution.
Daniel J. Ryan and A. J. Greene, for relator.
M. B. Barnhart, William T. Ciarle, G. H. Bargar aud A. F. Broomhall, contra.
If the lines of these distinctions appear to be finely drawn, it may be observed that a distinction between choosing and electing would not be less so. We see no substantial reason for denying the soundness of the principles which, in this state and elsewhere, have been with much uniformity applied to this grant and this limitation of legislative power. If they are sound, the general assembly, in passing this act, did not cross, though it may have reached, the limit of its authority.
The demurrer will be sustained.'