CASE 108—CONSTITUTION, ELECTIONS—APRIL 12, 1884.

# Buckner, &c., v. Gordon, &c.

APPEAL FROM CLARK CIRCUIT COURT.

1. Any officer who is charged with duties pertaining to a city or town government, as distinguished from a State, county, or district officer, is an officer of the city or town within the meaning of *section 6, article 6* of the constitution.
2. The failure to make provision in the constitution for city and town governments, the fact that such governments were in existence when it was adopted, and that they have ever since been controlled by the legislature, taken in connection with *section 6 of article 6*, shows that it was the intention of the framers of the constitution to leave these matters to the legislative will.
3. The act amendatory of the charter of Winchester, providing that voters at municipal elections shall pay their taxes before they vote, is not in violation of the constitution.
4. Such courts as police courts, with jurisdiction for the enforcement of ordinances, and limited jurisdiction in civil and penal cases, are recognized by some name under the entire American system of municipal government.
5. A judge of a city or town court is necessarily a city or town officer within the meaning of the constitution.

W. C. P. BRECKINRIDGE AND R. W. WOOLLEY FOR APPELLANTS.

The qualifications prescribed by the constitution for voters at State elections do not apply to municipal elections.

Every State and county officer holds under a constitutional tenure, and from governor down to constable the organic law creates the office, describes the functions, duties and liabilities of the incumbent, and fixes the duration of his term.

The conclusion is irresistible that as to the offices of cities and towns, as contradistinguished from State, district and county offices, the makers of the constitution had no intention to make any provision limiting the right of the legislature to create them, to define their powers and duties, and tenure of office. (Constitution, art. 6, sec. 6; Standiford v. Wingate, 2 Duv., 440; Trustees Owensboro v. Webb, 2 Met., 576; Constitution, sec. 5, art. 2; Speed & Worthington v. Crawford, 3 Met., 207; Const., sec. 30, art. 4; Police Commissioners v. Louisville, 3 Bush, 597; Paducah v. Cully, 9 Bush, 323; Boyd v. Chambers, 78 Ky., 140; 2 Otto, 215.)

W. M. BECKNER AND C. & T. M. EGINTON FOR APPELLEES.

The legislature, by the words "qualified voters," intended to make the police judge of Winchester elective by those persons in his district who are entitled to vote under the State constitution. He is to be chosen by male citizens twenty-one years of age, who have resided in the State two years, or in the county, town, or city in which they offer to vote, one year next preceding the election. (Const., art. 2, sec. 8.)

That construction of a statute is to be adopted which least restricts the public rights. (8 Howard, 539; 9 Ib., 172; 1 Blatch, 360.)

It should lean toward liberty and rights. (21 Ga., 139; 10 Ind., 493; 2 Nev., 271; Lieber's Hermeneutics, 172.)

Of two constructions, that must prevail which will conform to the constitution. (24 Cal., 518; 35 Ib., 606; 27 Wis., 478; 12 Iowa, 1; 21 Ib., 221; 52 Barbee, 533; Debates Const. Convention, 1106; 36 Conn., 432; Brightly Lead. Cas. Elec., 694; 3 Brewster, 214.)

The legislature can not fix the qualifications of voters, at a popular election for officers of a town, other than those fixed in article 2, section 8 of the constitution. (Creasey on Eng. Const., 320; 1 Kernan, 392; Hume's Hist. Eng., vol. 2, p. 53; Guizot's Hist. Civ.; 7 Leo; Hallam's Middle Ages, ch. 2; Jefferson's Works, vol. 5, 525; Matthew 17: 24-27; Ib., 22, 16, 21; Mark, 12: 14, 17; Salk, 193.)

JUDGE HINES DELIVERED THE OPINION OF THE COURT.

This is a proceeding to test the right of contending claimants to the office of police judge in the town of Winchester.

In 1840 the charter of the town was amended so as to provide that the trustees should be elected "by the free-

white male inhabitants . . over the age of twenty-one years, who shall have been *bona fide* residents of said town at least six months before said election, and shall have paid their poll-tax for the preceding year (whether the same hath been charged by the assessor or not), and also have paid all arrearages and taxes due by them to said town."

On the 14th of February, 1858, the legislature passed an act entitled "An act to establish a police court in the town of Winchester." It enacted that the court "should be called the police court of Winchester," that the "judge and marshal shall be elected by the qualified voters residing within the corporate limits of said town," and that the "election shall be duly advertised, and conducted in the manner prescribed by law for the election of trustees of said town.'"

At an election held according to law appellant received the greater number of votes, excluding those who had not paid their taxes, and appellee received the greater number of votes, not excluding those who had not paid their taxes. The questions presented are—

First—Did the act of 1858 apply to voters the qualifications prescribed by the amended charter of 1840, or the qualification of voters in elections generally which is prescribed by section 8 of article 2 of the constitution, which is as follows: "Every free white male citizen, of the age of twenty-one years, who has resided in the State two years, or in the county, town, or city in which he offers to vote, one year next preceding the election, shall be a voter; but such voter shall have been, for sixty days next preceding the election, a resident of the precinct in which he offers to vote, and he shall vote in said precinct and not elsewhere."

Second—If the act of 1858 applies the qualifications prescribed in the amended charter of 1840, is that act constitutional?

Upon the first point the inquiry is as to the meaning of the legislature in the use of the term, "qualified voters," used in the first section of the act of 1858. The title of the act is to "establish a police court in the town of Winchester," and in the body of the act the "qualified voters," who are to select the presiding officer of the court thereby created, are required to reside within the corporate limits of the town. At the time of the passage of the act there were but two bodies of electors to which the legislature could have referred—one whose qualifications were prescribed by the act of 1840, who were authorized to vote for trustees of the town, and the other those who were qualified by the constitution to vote in general State elections. There was no general statute law applicable to voters at municipal elections and for municipal officers to which reference could have been had by this enactment. The qualifications for electors fixed in the several charters of the towns and cities of the State are, and were, so variant that no general rule as to qualification can be evolved. The attention of the legislature, at the time of the passage of the act, was directed to the amendment, in effect, of the charter of the town, which contained a description of those who were entitled to vote in such town elections as the charter provided for; and as the act fixes the boundary of the town as the limit of the voting territory, and directs that the election of the police judge shall be "conducted in the manner prescribed by law for the election of trustees of said town," both elections to be held at the same time, it must be presumed that attention was directly drawn to the qualifications for electors fixed in the amended charter of 1840, and that if a different qualification had been intended it would have been so expressed. Any other construction would be the

creation of two distinct bodies of electors voting at the same time, within the same limits and upon municipal questions— one body having the qualifications fixed in the act of 1840, and the other the qualifications prescribed for electors at general elections. If such had been the intention its expression would certainly have been explicit. Especially is that true in view of the fact that long prior to and ever since the adoption of the constitution it has been the legislative rule, rather than the exception, to fix in the charters of towns and cities a qualification for electors different from that prescribed in the constitution for State, county, and district electors. We think it clear that the act of 1858 was intended to adopt the electoral qualification found in the amended charter of 1840.

Secondly, it remains to inquire whether the act of 1858 is unconstitutional because it fixes a qualification for electors other than that embodied in the constitution.

Section 8 of article 2 of the constitution, already quoted, and section 6 of article 6, appear to be the only provisions that bear directly upon this question. Section 6 of article 6, is as follows:

"Officers of towns and cities shall be elected for such terms, and in such manner, and with such qualifications, as may be prescribed by law."

Section 8 of article 2 is the only part of the constitution fixing the qualification of voters, and that does not undertake to designate in what elections or for what office the vote may be cast. The qualification is a "free white male citizen of the age of twenty-one years," who shall have resided in the State two years, or in the county, town or city in which he offers to vote, one year, and he shall have been sixty days a resident in the precinct in which he offers to.

vote. It prescribes the qualification of color, age, and length of residence that will entitle one to vote, without reference to the character of election at which the right may be exercised. But the provisions of the constitution as to the election of State officers by the "qualified voters" of the State at large, and of judges (appellate, circuit, and county), sheriffs, county and circuit clerks, assessors, coroners, and justices of the peace, by the "qualified voters" of the several districts and counties, clearly indicate that this qualification for electors was intended to apply in the election of constitutional officers, as distinguished from those created by legislative act. For in addition to the officers named in the constitution the 10th section of article 6 provides that "the general assembly may provide for the election or appointment for a term, not exceeding four years, of such other county or district, ministerial and executive officers, as shall from time to time be necessary and proper." These provisions of the constitution present a complete corps of officers for the administration of the State government, executive, legislative, judicial, and ministerial, designated in the constitution and provided for by legislative action; but no provision is made for officers for and the government of municipalities, except in section 6 of article 6, which provides that such officers shall be elected in such manner, for such time, and with such qualifications as the legislature may prescribe. This failure to make specific provision in the constitution for city and town governments, the fact that such governments were, at the time of the adoption of the constitution, and have ever since been controlled by the legislature, taken in connection with the 6th section of the 6th article, clearly shows the intention of the framers of the constitution to leave all these matters to the legislative will.

·Otherwise the 6th section of the 6th article would have no. operation; for if the 8th section of the 2d article has refer-·ence to towns and cities as well as to the election of State governmental officers, the 6th section of article 6 is surplus-age, there being no space for its occupancy.   Towns and ·cities, with all their machinery of government, are the crea-tures of legislative will, as has been repeatedly held by this ·court.   The power to create carries with it the power to de-·stroy, and the power to destroy necessarily implies the power to regulate.   This court has repeatedly construed the 6th section article 6 to mean that the officers therein men-tioned should be elected and not appointed, but it has also held that such election need not be by the whole body of the "qualified voters," but that it might be by a limited number.   In the case of Police Commissioners v. City of Louisville (3 Bush, 599) it was held that a selection and ap-pointment by the police commissioners of the city of a police force was an election within the meaning of section 6 ·of article 6; and in the city of Paducah v. Cully, &c. (9 Bush, 325) it was held, construing the same section and act, that the city council might elect the city treasurer.   These ·cases are in themselves sufficient to determine the construc-tion of this section; for if the word "elected" in that sec-tion has reference to the qualification of electors found in the 8th section of article 2, then the whole body of those qualified to vote under that section, and found within the ·city limits, would have been required to make the election valid.   It can not be said that the legislature can limit the number of those who vote for city officers and yet may not regulate or prescribe the qualifications of those who so vote. The selection of a limited body by legislative action to elect is the fixing of the qualifications of the electors.

This conclusion is inevitable, unless police judges do not come under the term "officers of cities and towns," as used in the 6th section article 6. Such courts as police courts, with jurisdiction for the enforcement of ordinances, and limited jurisdiction in civil and penal cases, are recognized by some name under the entire American system of municipal government, and have always been so recognized in this State. If such courts are city or town courts the judge presiding is necessarily a city or town officer within the meaning of the section. Nor does it matter that the power to create such courts is found in the 1st section of article 4 of the constitution, which authorizes the creation of inferior courts, nor does it make the judge thereof a State judicial officer, nor does that section in any way undertake to regulate the manner of electing the judges of such courts. Any officer who is charged with duties pertaining to the city or town government, as distinguished from a State, county or district officer, is an officer of the city or town within the meaning of the 6th section.

The cases cited by counsel for appellee, to establish the fact that judges of such courts are not city or town officers, are not in point. The case of Brown v. McConnell (36 Conn., 433) decides only that an act authorizing the mayor to appoint such judge is unconstitutional because the 5th article of the constitution expressly provides that such appointments shall be made by the general assembly. So in the case of Commonwealth v. Conyngham (3 Brewster, 214) it was held that as the judge presided over a court of record and of general jurisdiction he could not be appointed by an act of the legislature because the constitution expressly provided that such judges should be elected.

Judgment reversed and cause remanded, with further directions consistent with this opinion.