# 68

## MARTHA E. PLUMMER *et al.*

*v.*

## OSCAR YOST *et al.*

*Filed at Mt. Vernon, January 19, 1893.*

1. ELECTION OF SCHOOL OFFICERS — *right of women to vote.* Since the passage of the act of June 19, 1891, entitled " An act to entitle women to vote at any election held for the purpose of choosing any officer under the general or special school laws of this State," women above the age of twenty-one and having the qualifications required in that act, are entitled to vote at any election of school officers, except that of superintendent of public instruction and county superintendents of schools.

2. At the election of the State and county superintendent of schools, the qualifications of the voters must be those prescribed in sec. 1 of art. 7 of the constitution, but the constitution contains no direction as to what other school officers shall be created, or as to the mode in which the incumbents of those offices shall be designated and chosen.

3. SCHOOL LAW — *power of legislature to determine the qualification of voters.* The General Assembly, having complete control of the subject, has the power to provide for the designation of all school officers, except the two named in the constitution, by appointment or by popular vote, but such election is not necessarily a proceeding identical with the elections provided for by the constitution, nor is it necessary that the qualifications of those voting for school officers shall be the same as those of electors as defined by the constitution.

4. SAME — *discretion of legislature.* Section 1 of article 8 of the constitution requiring the General Assembly to provide for a system of free schools, leaves to the legislature the discretion as to the mode in which the system shall be organized, and the officers by whom it shall be controlled and directed, and its affairs administered. The only school officers expressly provided for by the constitution are a county superintendent and a State superintendent of public instruction.

APPEAL from the County Court of Jefferson county; the Hon. JOHN C. EDWARDS, Judge, presiding.

Mr. N. H. Moss and Mr. C. H. PATTON, for the appellants.

Mr. GEORGE B. LEONARD, for the appellees.

Mr. CHIEF JUSTICE BAILEY delivered the opinion of the Court:

This was a proceeding, instituted by Oscar Yost and Otto W. Wallace, in the County Court of Jefferson county, to contest the election of Martha E. Plummer and Mary M. Moss, to the offices of members of the board of education of school district number one, in Mt. Vernon township, Jefferson county. The contestants filed their statements under oath, which was answered by the defendants, and the cause was heard upon the following agreed statement as to the facts:

" That an election was held in said school district, according to law, on the 16th day of April, 1892, for the election of two members of the board of education in and for said district, and that at said election there were four candidates for said offices, to-wit, the contestants and the defendants; that the contestants are males and the defendants are females, and that at said election there were 883 ballots cast; that 293 of said ballots were cast by women, and the residue, 590, were cast by male voters; that all of said candidates and all of said voters were at the time of said election, possessed of the necessary age, citizenship, and residence in said State, county and school district, to make them legal voters, and eligible as candidates for said offices, unless the fact of the sex of the defendants, and of said 293 female voters, and the further fact that they, nor either of them were registered, rendered them ineligible as candidates and illegal voters; that at said election said Otto W. Wallace received 299 of said male votes, and Oscar Yost received 358 of said male votes, and the residue of said 883 votes were cast for the defendants, and being 517 votes for the defendant Martha E. Plummer, and 516 votes for the defendant Mary M. Moss; that all of said female voters voted for and their ballots were cast and counted for the defendants, and by which means their said majority was produced, and that they received certificates of their election, and afterwards, in due time, took

their oaths of office, and are now in the exercise of the duties thereof.

"It is also stipulated, that when each of said female votes were presented, they were challenged by the contestants, and that they then procured, made and executed affidavits of their right to vote at said election, in the usual form required by male voters whose right to vote is challenged, and who are not registered, and again presented their ballots to the judges of said election together with said affidavits, which were and each of them were again challenged by the contestants, and by one of the judges of said election, but said ballots and affidavits were and each of them were then and there received and entered on the poll lists of said election and counted as aforesaid. It is further stipulated, that none of said voters or candidates at said election were registered for said election previous thereto."

Upon the foregoing facts the court held, that at said election, there were only 590 legal votes cast; that contestant Otto W. Wallace received 299, and contestant Oscar Yost received 358 of said legal votes, and that defendant Martha E. Plummer received only 224, and defendant Mary M. Moss only 225 of said legal votes; that contestants Oscar Yost and Otto W. Wallace each received a majority of all the legal votes cast at said election, and were duly elected to said offices. Exceptions to the finding and judgment of the court were duly preserved, and the defendants bring the record to this court by appeal.

The question presented for our decision is, whether the court below decided correctly in holding that the 293 women who voted at the election sought to be contested, were not entitled to vote or have their ballots counted at such election. The first section of the "Act to entitle women to vote at any election held for the purpose of choosing any officer under the general or special school laws of this State," approved June 19, 1891, provides as follows:

"Any woman of the age of twenty-one years and upwards, belonging to either of the classes mentioned in article 7 of the

Constitution of the State of Illinois, who shall have resided in this State one year, in the county ninety days, and in the election district thirty days preceding any election held for the purpose of choosing any officer of schools under the general or special school laws of this State, shall be entitled to vote at such election in the school district of which she shall at the time have been for thirty days a resident: Provided, any woman so desirous of voting at any such election shall have been registered in the same manner as is provided for the registration of male voters."

The facts appearing by the stipulation show that the women who voted at the election in question possessed the qualifications required by the statute to entitle them to vote at elections of school officers. The admission that all those who voted at the election possessed the necessary age, citizenship and residence in the State, county and school district, to make them legal voters, must of course be understood as an admission that the women who voted were twenty-one years of age or upwards; that they were either native born or naturalized citizens of the United States, and that they had resided in the State one year, in the county ninety days and in the school district thirty days preceding the election. The only ground upon which their right to vote is questioned is, that they are not "male citizens of the United States," according to the literal import of the language used in article 7 of the Constitution, referred to in the statute above quoted.

Although the statute refers to article 7 of the Constitution in such terms as to adopt the qualifications of voters prescribed in that article, yet, as we held in *People* v. *English*, 139 Ill. 632, the true construction to be placed upon the statute is, that the qualifications prescribed in article 7 are adopted, save only the one relating to sex. To hold that that qualification also was intended to be adopted would make the statute meaningless and absurd. In the case referred to we said:

"If the language of the act and the words of the Constitution thus incorporated . therein are construed literally, they would seem to indicate that it was the legislative intention to confer upon women the right to vote at any election held for the purpose of choosing any officer of schools under the general or special school laws of the State, provided such women were males. A construction that would lead to such an absurdity is wholly inadmissible. A statute is to be interpreted according to its true intent and purpose, and its strict letter must be made to yield to the obvious intent. Words which are meaningless or inconsistent with the intention otherwise plainly expressed in the act may be rejected as redundant or surplusage. Here the word male read into the statute from the constitutional provision referred to therein is repugnant to the language of the statute, both preceding and following the part where such reference is made, and is wholly inconsistent with the entire scope and the manifest intent of the act. The evident intention of the legislators was, to give women the right to vote at the election of public school officers, provided they were twenty-one years of age, are citizens of the United States and have resided in the State, county and election district the respective lengths of time required, and have been registered, where the registration of voters is provided for."

In the case above cited the question was whether the statute under consideration was valid, so as to confer upon women the right to vote for a county superintendent of schools. That officer being one expressly provided for by the Constitution, and required to be chosen by election, the manner of his election to be prescribed by law, we held that, so far as such election was concerned, the Legislature had no power to dispense with any of the qualifications on the part of the electors prescribed by article 7 of the Constitution. But we said : "It may be that it is competent for the Legislature to provide that women who are citizens of the United States and over twenty-one years of age, may vote at elections held for school directors

and other school officers who are not mentioned in the Constitution; but that question is not before us for decision, and we therefore express no opinion in regard to it." It will thus be seen that the question presented by the record now under consideration is essentially an open one, or, at least, that it is in no way concluded by our decision in *People* v. *English, supra.*

Section 1, of article 8, of the Constitution, makes it the duty of the General Assembly to "provide for a thorough and efficient system of free schools, where all the children of this State may receive a good common school education." The mode in which the required "system of free schools" should be organized, and the officers by whom it should be controlled and directed and its affairs administered, is left to the legislative discretion of the General Assembly. The only school officers expressly provided for by the Constitution are, a county superintendent of schools in each county, and a State superintendent of public instruction. As to the former officer, section 5, of article 8, provides as follows: "There may be a county superintendent of schools in each county, whose qualifications, powers, duties, compensation, and the time and manner of election, and term of office, shall be prescribed by law." Section 1, of article 5, provides that the executive department of the State Government shall consist, among other officers, of a superintendent of public instruction, and section 3, of the same article, provides for an election of that officer quadrennially, "at such places and in such manner as may be prescribed by law." At the election of these two officers, as we held in the case above cited, the qualifications of the electors must be those prescribed in section 1, of article 7, of the Constitution. But the Constitution contains no direction as to what other school offices shall be created, or as to the mode in which the incumbents of those offices shall be designated and chosen. Those matters are left wholly to the discretion of the General Assembly.

It can not be doubted that, in providing for a system of free schools, a form of organization essentially different from the

present one might have been adopted. Entirely different offi-
cers might have been provided for, and provision might have
been made for the designation of those officers by appointment
rather than by election. Accordingly, it is provided by sec-
tion 17, of article 6, of the General School Law, that in cities
having a population exceeding 100,000 the members of the
board of education shall be appointed by the mayor, by and
with the advice and consent of the common council; and, un-
questionably, a similar mode of appointment of all school offi-
cers, other than the two above mentioned, might have been
constitutionally adopted. The General Assembly having com-
plete control of the subject, had, of course, the power to pro-
vide for the choice of these officers by popular vote, but such
an election is not necessarily a proceeding identical with the
elections provided for by the Constitution, nor is it necessary
that the qualifications of those voting for school officers
should be the same as those of electors, as defined by the
Constitution.

A principle analogous to the one under consideration was in-
volved in our decision in *People* v. *Nelson*, 133 Ill. 565. That
case presented, among other things, the question of the consti-
tutionality of that provision of the act for the creation of sani-
tary districts which permitted cumulative voting in the election
of the trustees of such districts, and we held that, since there
was no restriction upon the General Assembly in regard to the
mode of election of such trustees, it was discretionary with it
to provide for their election by cumulative votes. In consid-
ering the question, we said: "The point is made that the effect
of the sections of the Constitution providing for cumulative
voting in the election of representatives, and in the election
of directors of private corporations, is to deny to the General
Assembly power to authorize cumulative voting for any other
purposes, upon the principle that the expression of one thing
is the exclusion of another. This could be true only in the
event that some provision of the Constitution required elections,

generally, to be by a majority of the persons voting, but can not be true where all the elective officers are named, and it is specifically provided how they shall be elected. In such case, the direction that each officer shall be elected in a prescribed way, negatives that he shall be elected in any other way, but the negation can go no further, because the election to each office can be governed only by the restrictions applicable to that office. There is no provision in the Constitution requiring elections, generally, to be by a majority of the persons voting, but in each article of the Constitution certain officers are named, and as to those there are required to be elections, but as to other officers not named, there is no requirement or restriction in this respect."

The case of *Belles* v. *Burr*, 76 Mich. 1, involved substantially the same question now before us, and is therefore quite in point. The Constitution of Michigan provided that, in all elections, every male citizen, etc., should be an elector and entitled to vote. It also required the Legislature to provide for and establish a system of primary schools. The school law of Michigan, passed in pursuance of this constitutional requirement, gave every person of the age of twenty-one years, and possessed of certain other qualifications — that of being a male not being one of them — the right to vote at school district elections. The plaintiff, a woman over twenty-one years of age, and possessing the other statutory qualifications, offered to vote at an election of school trustee, but her vote having been rejected by the inspectors, she brought suit against them for damages and recovered a verdict. On appeal from the judgment rendered on such verdict, the Supreme Court held that the plaintiff was entitled to vote at that election, notwithstanding the qualifications for electors prescribed by the Constitution, and the judgment was accordingly affirmed. In its opinion, the court, after remarking that no officer of the school district was mentioned in or recognized by the Constitution, said : " While it must be conceded that no person can vote for the election of any officer

mentioned in the Constitution unless he possesses the qualifications of an elector prescribed by that instrument, it does not follow that none but such electors can vote for officers which the Legislature has the right to provide for to carry out the educational purpose declared in that instrument."

The case of *Wheeler* v. *Brady*, 15 Kansas, 26, was *quo warranto* to try the title of a school district trustee to his office, the majority which he received at the school election being made up wholly of the votes of certain females, who were permitted to vote. The Constitution of that State conferred the right to vote at elections upon white male citizens of the age of twenty-one years and upwards, and possessing certain other prescribed qualifications. Provision was made by that instrument for the election of various officers, but no mention was made of school district elections or of the election of school district officers. By the school law, two classes of persons were permitted to vote at school elections, viz., 1. those possessing the constitutional requirements, and 2. females possessing the same qualifications excepting that of sex. It was held that the females who voted for the defendant in that case were qualified to vote at that election, and that the defendant was therefore duly elected. In reaching that conclusion, the court said : " There is no school district election or meeting provided for in the Constitution ; there is no provision as to how school district officers shall be elected, appointed or chosen ; and we suppose that no one will claim that they are, by the terms of the Constitution, to be elected at either of the elections provided for in the Constitution ; hence it would seem that the Legislature would have complete power over the matter; that the Legislature might provide for the election or appointment of school district officers as it should choose, when it should choose, in the manner it should choose, and by whom it should choose."

*State* v. *Cones*, 15 Neb. 444, presented a state of facts very similar to those appearing in the case last cited, and was

decided in the same way, and upon the same principles. See also Opinions of Judges, 115 Mass. 602.

We are of the opinion that the women who voted at the election in question in the present case were entitled to vote at that election, and that their ballots were properly counted in favor of the defendants. It follows that the defendants were legally elected to the offices of members of the board of education of school district number 1, in Mt. Vernon township, and that the judgment of the County Court deciding the contest in favor of the contestants is erroneous. The judgment will be reversed, and the cause will be remanded to the County Court, with directions to enter judgment in favor of the defendants.

*Judgment reversed.*