STATE EX REL. JOHN T. COLE, S. W. BROWN, AND W. V. MASSENGILL v. J. W. SANDERS, W. W. STEWART, AND JOHN R. MASSENGILL.

(Filed 26 September, 1917.)

**Public Officers—Qualifications Recommendatory—Statutes—Courts.**

The provision in a statute that township highway commissioners shall be selected for their fitness, and not for political faith, and to remove the position from partisan politics, one each of the two members to be elected shall, "so far as feasible and practicable, come from each of the two leading political parties of the township," is too indefinite and uncertain to affix a qualification to the position, being recommendatory only to the voters, whose action is not reviewable by the courts.

CIVIL ACTION tried before *Cox, J.,* at the April Term, 1917, of JOHNSTON.

This is an action in the nature of a *quo warranto,* instituted by the plaintiffs, the relators, to recover possession of the offices of the Township Highway Commissioners of Ingrams Township in Johnston County.

His Honor rendered judgment in favor of the plaintiff, and the defendants appealed.

*S. S. Holt and James D. Parker for plaintiffs.*
*F. Hunter Creech and Abell & Ward for defendants.*

BROWN, J. The facts are that the relators were elected highway commissioners by the following votes: John T. Cole, 321 votes; W. B. Massengill, 321 votes; S. W. Brown, 318 votes. The defendant John W. Sanders received 192 votes; W. W. Stewart, 197 votes; and John R. Massengill, 196 votes.

The plaintiff duly qualified and demanded possession of the offices of the defendants John W. Sanders and G. K. Massengill, who were members of the old board of highway commissioners of said township, the books, records, and all other property of the highway commission. The defendants refused to surrender, and the plaintiffs brought this action for possession of the offices.

The defendants do not deny the above allegations, but allege that the plaintiffs are not entitled to recover because the Public-Local Laws of 1913, chap. 441, sec. 7, provides:

"That a township highway commission for each and every township in the county of Johnston is hereby created and incorporated, which township highway commission shall consist of three members, one of which shall be chairman and another clerk; said township highway commission shall be *selected for their fitness and not for political faith,* provided that at each and every election by popular vote of any township highway commission, and in order to remove the same, as far as possible, from partisan politics, *one each of the two members* of the several township highway commissions to be elected under this act shall, so far as feasible and practicable, *come from each of the two leading political parties of such township."*

The defendants allege that all three of the plaintiffs are Republicans, and that it was "possible and practicable" to have elected a competent person of a different political faith in compliance with the provisions of said statute.

We are of opinion that the plaintiffs are entitled to recover possession of the offices, as adjudged by his Honor below. We think the words of the act declaring, in substance, that, "so far as feasible and practicable," two members shall be selected from each of the two leading political parties, are merely recommendatory to the voters. They are entirely too indefinite and uncertain to have the effect of affixing a qualification to the position of highway commission. The feasibility and practicability of electing persons of different political parties is a matter for the voters to pass on, and their judgment is final and not reviewable by the Courts.

The judgment of the Superior Court is

Affirmed.

CLARK, C. J., concurring: At an election regularly held 7 November, 1916, for three highway commissioners in Ingrams Township, Johnston County, the plaintiffs received the following vote: John T. Cole, 321 votes; W. B. Massengill, 321 votes; and S. W. Brown, 318 votes, while the defendants received: John W. Sanders, 192 votes; W. W. Stewart, 197 votes; and John R. Massengill, 196 votes. The plaintiffs duly subscribed to the oath of office and were sworn in as township highway commissioners. Immediately thereafter, on 4 December, 1916, they demanded of the defendants John W. Sanders and G. K. Massengill, who were members of the old board of highway commissioners for said township, the books, records, and all other property of said highway commission, which the defendants refused to surrender, and this action of *quo warranto* was brought for the possession of said offices.

The defendants do not deny above allegations, but allege that the plaintiffs are not entitled to recover because Public-Local Laws 1913,

8—174

chap. 441, sec. 7, provides: "A township highway commission for each and every township in the county of Johnston is hereby created and incorporated, which township highway commission shall consist of three members, one of which shall be chairman and another clerk; said township highway commission shall be selected for their fitness, and not for political faith, provided that at each and every election by popular vote of any township highway commission, and in order to remove the same, as far as possible from partisan politics, one each of the two members of the several township highway commissions to be elected under this act shall, so far as feasible and practicable, come from each of the two leading political parties of such township." A third member was, by the same section, to be chosen by each township after the first election.

The defendants allege that all three of the plaintiffs are Republicans, and that it was "possible and practicable" to have elected a competent man of a different political faith, in compliance with the provisions of said statute. The court, there being no disputed facts, properly rendered judgment in favor of the plaintiffs.

If the constitutional qualifications apply to this position, this case is governed by *S. v. Bateman*, 162 N. C., 591, in which it is said: "The Constitution of this State, Article VI, prescribes who shall be 'voters,' and section 7 of that article provides: '*Every* voter in North Carolina, except as in this article disqualified, shall be eligible to office.' The Legislature is, therefore, forbidden by the organic instrument to disqualify any voter, not disqualified by that article, from holding any office. The General Assembly cannot render any 'voter' ineligible for office by exacting any additional qualifications, as by prescribing, in this instance, that the candidate shall be a 'licensed attorney at law,' any more than it could prescribe that he should own a specified quantity of property, or should be of a certain age, or race, or religious belief, or possess any other qualification not required to make him a voter."

The provision in the Constitution, Art. VI, sec. 7, that "*Every voter* in North Carolina, except as in this article disqualified, shall be eligible to office," was especially intended to prevent any action by the Legislature disqualifying any voter from holding office on account of race or color. The disqualifications in that article provided are set out in section 8 thereof, and disqualify only atheists and those convicted of treason, felony, or of any penitentiary offense, or of corruption or malpractice in office, unless restored to the rights of citizenship. The Legislature is disabled, therefore, to disqualify any other "voter" from holding office. The Constitution, Art. XIV, sec. 2, prescribes as a penalty to be imposed by a sentence of court, disqualification to hold office upon any one who shall take part in or be accessory to duelling; and the same article, section 7, prohibits any person from holding two offices or places of

trust or profit.  However commendable the object of the Legislature was
in attempting to provide for a nonpartisan board of township highway
commissioners, the provision of the Constitution is so explicit ·that the
judge properly refused to hold either of the plaintiffs as disqualified,
it being admitted that all three had received a majority of the votes
cast.  It is difficult to see which one of the three he could have held
disqualified; and if he had held one of them disqualified, still two were
admittedly legal officers, and being a majority of the board, they were
entitled to a mandamus to be inducted into office, and they could then
fill the vacancy as to the third man as provided in the act, for upon no
theory could any one of the defeated candidates be held elected on
account of the disqualification of his competitor, if it had existed (*S. v.
Bateman, supra,* where the proposition is fully discussed), and there
would be merely a failure to elect the third commissioner.

It is very apparent that if the Legislature can prescribe that a part
of the commission must belong to the opposite political party; if it can
take into consideration as qualification, or disqualification, the political
or religious or other views of candidates, it can prescribe that all the
members of the commission or candidates for any office, even members
of the Legislature, shall be of the same party, or of the same race, or of
the same church affiliations as the majority of the General Assembly.
It is true that this is very improbable action, but it was because that it
was deemed probable that some future Legislature ·might prescribe race
or color as a qualification for office that this enactment was put in the
Constitution with a view of preventing any disqualification of any voter
"other than those in that article disqualified."

In accordance with these views is the ruling in *Attorney-General v.
Detroit,* 58 Mich., 213; 55 Am. Rep., 675, and many other cases.  "Where,
however, no constitutional prohibition intervenes, the Legislature may
fix the qualifications for office, and may also add to them at pleasure."
Mechem on Office, secs. 97, 465; *Commonwealth v. Plaisted,* 148 Mass.,
386, 387; *Rogers v. Buffalo,* 123 N. Y., 173.

We have very proper provisions requiring, in the appointment of
election boards for canvassing returns, that at least one member shall be
of an opposite political party from the other two.  This is to insure
fairness in the returns, and is a highly important provision for the
correct ascertainment of the popular will at the ballot box.  These
appointees, however, are not officers within the meaning of this pro-
vision of the Constitution.

There is ample authority, however, for the proposition that the quali-
fications prescribed for office in a constitution apply only to offices
created therein or authorized by it, as was the case in *S. v. Bateman,
supra,* who was elected judge of a recorder's court which the Legislature

was authorized to create by the amendment of 1876, Art. IV, sec. 12. In *Scown v. Czarnecki,* 264 Ill., 312, it is held in a full discussion, with ample citation of authority, that the constitutional requirements apply only "to elections provided for by that instrument. The qualifications of voters at such elections are fixed by the Constitution, and the Legislature cannot change them. Other elections, however, provided for only by statute and not by the Constitution are wholly within the control of the Legislature."

The distinction between offices of constitutional origin and those created by statute, as to their control by the Legislature, has been repeatedly recognized, and the rule has been often announced that an office created by legislative action is wholly within the control of the Legislature which can declare the manner of filling it, how, when, and by whom the incumbent shall be elected or appointed, and to change from time to time the mode of election or appointment. *People v. Morgan,* 90 Ill., 558, and numerous other cases cited in *Scown v. Czarnecki,* 264 Ill., 312.

In *S. v. Dillon,* 32 Fla., 545; *Buckner v. Gordon,* 81 Ky., 665; *Hanna v. Young,* 84 Md., 179; *Plummer v. Yost,* 144 Ill., 68, and many other cases, it is held that "constitutional provisions prescribing the qualifications of electors do not apply to any election for municipal offices not provided for by the Constitution, but created by legislative enactment."

This is made absolutely so in our State by the amendment to the Constitution (now section 14, Article VII), which places suffrage in the counties and towns absolutely in the discretion of the General Assembly. Under this amendment, the Legislature in a very large number of counties, during a long series of years, made the magistrates, and not the people at large, electors for county officers, and provided for the appointment of aldermen by the Governor or by other constituencies than the people. *Harriss v. Wright,* 121 N. C., 172. To this day, in many counties, the justices are not elected by the "voters," but by the Legislature. Laws 1917, chap. 10.

As the board of highway commissioners of this township was created, not by the Constitution, but by the General Assembly, it had the power to prescribe by what constituency they should be elected, whether by the magistrates, or by the landowners, or by the county commissioners, or otherwise; and hence the General Assembly had the right to prescribe qualifications for these positions at pleasure. Mechem on Office, sec. 97; *Comm. v. Plaisted,* 148 Mass., 386; *Rogers v. Buffalo,* 123 N. Y., 173. Therefore, speaking for myself, while admitting that there can be no disqualifications for office added by the Legislature as to offices created by the Constitution (which was not done in this act), it seems to me that, as to positions created by the General Assembly having the authority to create the office, it can prescribe its term and salary and tenure, and change or abolish these at will; and that hence the act in question

is valid in requiring that one of the highway commission shall be of the opposite political party to the others. But there is no method provided for enforcing the disqualifications, and in the absence of such legislation, the judge was compelled to require the defendants to surrender the office to the newly elected board, of whom two at least, being a quorum, are duly elected and legally entitled. No one of the defendants was elected or has any color of title.

In this there is no question raised as to the right of the Legislature to authorize other than State voters to hold office. It is simply a question whether it has a right to disqualify any who are voters at that election from eligibility to these positions for which they received a majority of the votes.

It was well said by *Chief Justice Marshall* in *U. S. v. Maurice,* 2 Brock, 96: "Although an office is an employment, every employment is not an office." Mechem on Offices, sec. 2 and notes; Throop on Officers, sec. 3 and notes. Our State Constitution clearly distinguishes between "offices" (referred to in the Constitution, Art. VI, sec. 7, to which "every voter" is eligible, unless disqualified in the following section 8 of that article) and "places of trust or profit," which are therefore not offices (Const., Art. XIV, sec. 7), for these places of trust or profit the Legislature is not disabled from prescribing or adding other qualifications. For this reason, also, I am personally of opinion that the Legislature was authorized to prescribe such qualifications as it saw fit for this board created by itself; and on that ground, also, am of opinion that the act is valid, but that the judge below could not do otherwise than induct the two admitted legal commissioners into office and oust the defendants, leaving to the newly elected board, of whom a legal quorum was present, to manage the affairs of the commission. In the absence of a legislative provision prescribing the method of procedure, when one of those receiving the highest vote is not of an opposite political party to the other two, the Courts must wait till the Legislature shall prescribe such method.

Can it seriously be held that to the voters of this township was really submitted the question whether there was any Democrat whom it was "feasible and practicable to elect"? They did not in fact pass upon any such question. The majority of voters in the township were Republicans, and they elected three Republicans because they preferred them, and they were doubtless advised by counsel that, under the Constitution and the ruling of this Court in *S. v. Bateman,* 162 N. C., 591, *"Every voter* was eligible" unless he were an atheist, a convict, or had been removed from office for corruption, and for that reason, and not because they voted that no Democrat in the township was competent, did the electorate choose the plaintiffs at the ballot box.

The judgment of the court below in any view must be affirmed.