DORA SPATGEN, Respondent, v. JOE O'NEIL, A. H. Nieter, and John Wolf, Sr., as Individuals, and Joe O'Neil, A. H. Nieter, and John Wolf, Sr., as the Election Board of the Village of New Leipzig, North Dakota, Appellants.

(169 N. W. 491.)

**State Constitution — elective franchise — limitations — to male persons — legislature — not precluded from authorizing women to vote — for village officers.**

Section 121 of the Constitution of North Dakota, which limits the elective franchise to male persons of the age of twenty-one years or upwards, does not preclude the legislature from authorizing women to vote for village officers.

Opinion filed November 2, 1918.

NOTE.—For authorities passing upon the question of right of women to vote, see notes in 21 L.R.A. 662; 27 L.R.A. (N.S.) 512; and L.R.A.1915B, 247.

Appeal from the District Court of Grant County, *J. M. Hanley,* J. Affirmed.

*Jacobsen & Murray,* for appellants.

The statute under which this action is brought is squarely in conflict with the Constitution of the state.

"No law extending or restricting the right of suffrage shall be in force until adopted by a majority of the electors of the state voting at a general election." N. D. Const. § 122.

*Vincent Hogen,* for appellee.

The word "elections" as used in the Constitution has been held to have reference to the choice of officers alone. Coggeshall v. Des Moines, 117 N. W. 312; Seeman v. Ballman, 47 N. W. 1091.

The courts can decide only whether the legislature has overstepped the limits prescribed for it by the Constitution. Pennsylvania R. Co. v. Riblett, 66 Pa. 164; Fairbanks v. United States, 181 U. S. 283.

BIRDZELL, J. This is an appeal from an order overruling a demurrer to the complaint. The action is one for damages occasioned by the alleged illegal acts of the defendants, as members of the election board of the village of New Leipzig, in excluding the plaintiff from participation in a certain election held on March 19, 1918, for the election of certain local officials, to wit: three village trustees, a treasurer, a clerk, and an assessor. Aside from the formal allegations in the complaint, it is alleged that the plaintiff is a woman, a citizen of the United States and of the state of North Dakota, and a resident of the village of New Leipzig for a sufficient period of time to entitle her to the right to vote for the above officers under the provisions of chapter 254 of the Session Laws of 1917. That the plaintiff duly presented herself at the polls in said village where the election was being held, and requested of the defendant board that she be given a ballot in order that she might exercise the privilege of voting. That the defendant officers refused to give to the plaintiff a ballot and to allow her to vote, and that "said election board insolently and contumaciously refused to give to this plaintiff a ballot upon which she could express her will and preference for the candidates for the different offices except justice of the peace, and refused to permit her to vote at said election, for any candidate, giving as a reason for such refusal

and stating to this plaintiff that it was the only reason that Senate
Bill No. 12 (Sess. Laws 1917, chap. 254), under the provisions of
which the plaintiff was desiring to exercise her right to vote for the
candidates for certain offices, was unconstitutional, void, and of no
effect."

The only question presented upon this appeal is the constitutional-
ity of that portion of chapter 254 of the Session Laws of 1917 which
purports to authorize women possessing the requisite qualifications to
vote for certain village officers. The statute is as follows:

"Section 1. All women, citizens of the United States of the age of
twenty-one years or upwards, who shall have resided in the state one
year and in the county six months, and in the precinct ninety days
next preceding any election, shall be allowed to vote at such election
for Presidential electors, county surveyors, county constables, and for
all officers of cities, villages and towns (except police magistrates and
city justices of the peace) and upon all questions or propositions sub-
mitted to a vote of the electors of such municipalities or other politi-
cal divisions of this state.

"Section 2. All such women may also vote for the following town-
ship officers: Township clerk, assessor, treasurer, overseer of highways
and constables, and may also participate and vote in all annual and
special township meetings in the township in which such election shall
be.

"Section 3. Separate ballot boxes and ballots shall be provided for
women, which ballots shall, to the extent to which such women may
vote, as aforesaid, be the same as those provided for male voters, both
as to candidates and special questions submitted. At any such election
where registration is required women shall register in the same man-
ner as male voters."

We are only concerned with the constitutionality of the foregoing
statute in so far as it affects the right of the plaintiff to vote for the
officers known as village trustee, village treasurer, village clerk, and
village assessor, and we shall consequently refrain from expressing
any opinion as to the constitutionality of the law as it might affect
the right of women to vote for officers and upon questions other than
those involved in this action. It is a well-established rule of con-
stitutional law that the constitutionality of an act of the legislature

cannot be judicially determined except at the instance of one who is a member of a class as to which the act has an unconstitutional application. The provisions of the Constitution which are alleged to have been transcended in adopting the legislation above quoted are found in article 5, governing the "elective franchise." Section 121 of article 5 provides that every male person of the age of twenty-one years or upwards, belonging to any one of certain defined classes (which exclude women generally), who shall have resided in the state one year, in the county six months, and in the precinct "ninety days next preceding any election, shall be a qualified elector at such election." Section 122 expressly gives to the legislative assembly power to make extensions of the suffrage to all citizens of mature age and sound mind without regard to sex, but provides that "no law extending or restricting the right of suffrage shall be in force until adopted by a majority of the electors of the state voting at a general election." Other sections protect electors from arrest on election days during their attendance at the election, exempt them from the performance of military duties on election day (with certain exceptions), fix the time of holding general elections, provide for the residence of persons in the military and naval service of the United States, and for a secret ballot. Section 128 gives to women possessing the qualifications of an elector as to age, residence, and citizenship, the right to vote "for all school officers and upon all questions pertaining solely to school matters," and makes them eligible for any school office. It is admitted that chapter 254 of the Session Laws of 1917 was not referred to the electors of the state at a general election.

It is contended on behalf of the defendants and appellants that the provisions of the Constitution above referred to comprise a complete definition of the qualifications of an elector and of the rights of women to participate in all elections which may be authorized by the legislature: also that a law which purports to authorize their participation in any election, other than a school election, is a law extending the right of suffrage within § 122, which cannot be in force until adopted by a majority of the electors.

On behalf of the respondent it is contended that the qualifications of an elector, as stated in the Constitution, are defined with reference to such elections as are contemplated by the Constitution either to

choose the officers enumerated therein or to decide matters that might be submitted according to some method authorized thereby. It is contended that when construed in their true light the constitutional provisions referred to do not limit the power of the legislature to regulate municipal matters generally, and particularly with reference to the method of selecting municipal officers.

We are not concerned here with the power of the legislature to give to women. the right to participate in the selection of nonconstitutional officers generally, and with respect to constitutional officers and all elections contemplated by the Constitution it is admitted that the legislature cannot extend the suffrage without a referendum as provided in § 122. We are only concerned with the right of the legislature to authorize women to vote for the named village officers. On the general question, in its broad aspect, the authorities are in irreconcilable conflict. For authorities holding that the legislature may authorize women to participate in the selection of all but constitutional officers or otherwise depart from the constitutional qualifications of electors in particular elections, see Scown v. Zarnecke, 264 Ill. 305, L.R.A.1915B, 247, 106 N. E. 276, Ann. Cas. 1915A, 772; Hanna v. Young, 84 Md. 179, 34 L.R.A. 55, 57 Am. St. Rep. 396, 35 Atl. 674; State ex rel. Harris v. Hanson, 80 Neb. 724, 115 N. W. 294, 117 N. W. 412; State ex rel. Lamar v. Dillon, 32 Fla. 545, 22 L.R.A. 124, 14 So. 383; Buckner v. Gordon, 81 Ky. 665. For contrary holdings, see Election Comrs. v. Knight, — Ind. —, 117 N. E. 565; People ex rel. Bokkelen v. Canaday, 73 N. C. 198, 21 Am. Rep. 465; Coffin v. Thompson, 97 Mich. 188, 21 L.R.A. 662, 56 N. W. 567; also dissenting opinions in Scown v. Zarnecke, supra, and State ex rel. Taylor v. French, 96 Ohio St. 172, 117 N. E. 173, Ann. Cas. 1918C, 896.

It is generally held, however, that constitutional provisions such as those referred to do not limit the power of the legislature to authorize participation by women in elections for the determination of local matters in which they may have a legitimate interest in common with men. Thus, in Iowa, where the supreme court has held that women may not be authorized to participate in the selection of officers not named in the Constitution, it is held that they may be authorized to vote upon questions of municipal indebtedness. Coggeshall v. Des Moines, 138 Iowa, 730, 128 Am. St. Rep. 221, 117 N. W. 309. The

Constitution of Iowa fixes the qualifications of electors who "shall be entitled to vote at all elections which are now or may hereafter be authorized by law." Iowa Const. art. 2, § 1. This, the court held, to prescribe qualifications only for those voting at elections for choosing officers.

To what extent § 6 of article 2 of the Iowa Constitution, which fixes the time for holding the general election for state, district, county, and township officers, is responsible for the broad definition of the term "election" (making it applicable to all elections for the selection of officers), as used in the provision defining the qualifications of electors, does not appear, but it would seem that in the Iowa Constitution it was clearly contemplated that only electors should be permitted to participate in any election for the selection of officers, and such is the holding of the Iowa court. See Coggeshall v. Des Moines, supra. In the Constitution of North Dakota there is no provision, such as is contained in the Iowa Constitution, with reference to the election of local officers, and the Iowa decisions, for this reason, lose some of their force as precedents touching the question in hand. For a similar reason the case of State ex rel. Kimball v. Hendee, 57 N. J. L. 307, 30 Atl. 894, is not a strong precedent; for in New Jersey the Constitution fixed the qualifications of voters "for all offices that now are, or hereafter may be, elective by the people."

It has been quite generally held that legislative authority, conveyed in general terms, to deal with certain subjects, carries with it a power to determine the means through which the authority may be best exercised. Thus, where authority has been given to establish a common-school system, it is held that the legislature is free to prescribe the qualifications for school officers and of those who may vote for such officers and upon matters pertaining to schools. It is held that in so doing the legislature may authorize women to participate in school elections and to hold school offices, and this notwithstanding the usual constitutional provisions limiting the elective franchise to males. See Plummer v. Yost, 144 Ill. 68, 19 L.R.A. 110, 33 N. E. 191; Kelso v. Cook, 184 Ind. 173–184, 110 N. E. 987, Ann. Cas. 1918E, 68; Wheeler v. Brady, 15 Kan. 26; Opinion of Justices, 115 Mass. 602; Belles v. Burr, 76 Mich. 1, 43 N. W. 24; State v. Cones, 15 Neb. 444, 19 N. W. 682; State ex rel. Mills v. City Bd. of Elec-

tions, 9 Ohio C. C. 134, 6 Ohio C. D. 36, 54 Ohio St. 631, 47 N. E. 1114; State ex rel. Eastern & W. School Dists. v. Cincinnati, 19 Ohio, 178; Harris v. Burr, 32 Or. 348, 39 L.R.A. 768, 52 Pac. 17. Upon like reasoning it has also been held that a constitutional provision authorizing municipalities to frame charters for their government enables them to confer upon women the right to vote for municipal officers. State ex rel. Taylor v. French, 96 Ohio St. 172, 117 N. E. 173, Ann. Cas. 1918C, 896. We are unable to perceive any distinction based upon the source of the power to authorize the participation by women in the local election; that is, as to whether it be authorized by the legislature acting under a provision of the Constitution giving it plenary power over municipalities (see § 130, N. D. Const.), or whether it be directly and locally authorized under a constitutional provision permitting the framing of home rule charters as in the Ohio case. In either case the real source of the power to authorize a degree of participation by women in local affairs is the Constitution. It has been generally recognized that the power of the legislature to regulate municipalities may be exercised within a broad domain. Thus, it has been held that the legislature may depart from the qualifications of voters as defined in the Constitution in authorizing votes upon matters of public improvements. Spitzer v. Fulton, 172 N. Y. 285, 92 Am. St. Rep. 736, 64 N. E. 957. See also Valverde v. Shattuck, 19 Colo. 104, 41 Am. St. Rep. 288, 34 Pac. 107; Callam v. Saginaw, 50 Mich. 7, 14 N. W. 676; Coggeshall v. Des Moines, supra; Buckner v. Gordon, 81 Ky. 665, supra. We can see no fundamental difference between a legislative regulation of municipal matters that allows women to participate in elections that bind municipal officers to a given course of conduct, and one that allows them to vote for the municipal officers themselves. One method of directing the conduct of municipal affairs is as permissible, from a legislative standpoint, as the other, and, in the absence of constitutional provisions which expressly or by fair implication forbid resort to one or the other of these methods, either or both may be employed according to the legislative will. We are satisfied that the legislature in the exercise of its control over minor municipalities may authorize women to participate in the selection of local officers whose election is not provided for in the Constitution. We do not, however, express any opinion as to the

soundness of the general proposition supported by the authorities hereinbefore cited, to the effect that the legislature may prescribe qualifications for electors different from those contained in the Constitution, which shall be applicable to the election of all officers whose election is not expressly sanctioned by the Constitution.

It would seem almost superfluous to add that we recognize the force of the principle, which, so far as our observation goes, is universally adhered to, that where the Constitution prescribes the qualifications of electors the legislature is powerless to add to or subtract from those qualifications. Cooley, Const. Lim. 559, 5th ed. 753. From this it follows that it cannot admit to the defined class persons not possessing the constitutional qualifications. This principle is not decisive of this case, however, for the reason that it is clear to us that the legislature, in the exercise of its plenary power to regulate the affairs of municipalities, is not bound to respect electors as an exclusive class in providing for the selection of municipal officers, any more than it is bound to respect them as a class in providing for a vote upon matters of municipal indebtedness, improvements, or policies generally.

The order appealed from is affirmed.

ROBINSON and GRACE, JJ., concur in the result.